R. W. Benfield, as Executor, etc., *Appellant,* v. O. E.
Croson et al. (J. C. Houser, *Appellee*).

No. 17,951.

SYLLABUS BY THE COURT.

1. Exchange — *Merchandise for Land* — *"Forfeit" Money De-
posited—Default—"Forfeiture" Not Enforceable.* A stock of
merchandise to be valued at the cost price of each article at
wholesale was traded for a tract of land to which a certain
value was assigned. The contract provided that the merchan-
dise should be invoiced and if it amounted to less than the
price placed upon the land the vendor should pay the dif-
ference in cash. If it amounted to more the vendee should
pay the difference in cash. The contract further provided that
each party should stake as a forfeit the sum of $500, to be
placed in the hands of a third person, and should either one
fail to keep all and singular the terms of the agreement the
deposit should be forfeited to the other. *Held,* the language of
the contract providing for a forfeiture and not for stipulated
damages should control in the absence of circumstances in-
dicating a different intention; that actual damages resulting
from a breach of the contract were readily provable without
entering into the realm of speculation and conjecture; that the
amount of the stake was fixed without reference to compensa-
tion for loss in case of a breach; and that upon default by one
party the other could not enforce the forfeit.

2. Pleading—*Amendment Changing Cause of Action—Judicial
Discretion.* In an action by the vendee to recover the vendor's
forfeit from the stakeholder the vendor was interpleaded in
a county other than that of his residence. After the petition
had been once amended and after a great lapse of time the
action came on for trial and a demurrer was sustained to the
plaintiff's evidence. The plaintiff then asked leave to amend
by changing the cause of action to one for actual damages for
breach of contract. *Held,* it was not an abuse of discretion
to deny the request.

3. Judgment—*Not Reversed to Allow Nominal Damages.* A
judgment will not be reversed and the cause remanded merely
for the purpose of allowing the defeated party to recover
nominal damages.

Appeal from Saline district court; B. A. MASON, judge. Opinion filed November 8, 1913. Affirmed.

*Frank T. Knittle,* and *J. O. Wilson,* both of Salina, for the appellant.

*Thomas L. Bond,* of Salina, for the appellee.

The opinion of the court was delivered by

BURCH, J.: Houser and Benfield entered into the following contract:

"This Indenture made and entered into this 3rd day of July, A. D. 1907, at Grainfield, Gove County, Kansas. Between J. C. Houser of Grainfield, Gove Co., Kansas, party of the first part, and G. W. Benfield (unmarried-man), of Salina, Saline Co., Kansas, of the second part.

"WITNESSETH: That for the stipulations and considerations hereinafter written, first party has and does this day sell to second party his stock of merchandise, now contained in Building situated on lot 25 in block 31 in the City [of] Grainfield, Kansas, at the cost-price of each article contained in said stock as per Invoices for purchase of such goods at wholesale: in case Invoices cannot be produced to ascertain price for any article, such price on such article, is hereby agreed shall be fixed by O. E. Croson, who is qualified by first-class information to fix the market price of goods of every description.

"In payment from 2nd party, first party buys and is to receive good and sufficient warranty deed from 2nd party to the West Half (½) of the Northeast Quarter (¼) of Section Fifteen (15) in Township Fourteen (14) South of Range Two (2) West of the 6th P. M. Kansas, containing 80 acres more or less according to U. S. Survey. 2nd party furnishing Abstract showing good commercial title to such land: The price for the land being $4800.00 and it is hereby agreed that if said stock of goods shall Invoice in total more than $4800.00, 2nd party is to pay to first party in cash, the remainder and vice-versa should the stock of goods Invoice in total less than $4800.00, first party shall pay to 2nd party the remainder in cash. In either case this trade is to be concluded and closed with cash at completion of inventory of first party's stock of merchandise.

"First party by these presents binds himself and agrees to furnish to 2nd party a genuine Bill-of-Sale releasing said goods from any charge, claims, or rights of any other person or persons, Whomsoever.

"In earnest of these engagements. Both parties hereto, stake as a forfeit the sum of $500 which sum of money to be in checks payable to O. E. Croson to be by him deposited in Bank. Either party hereto failing to keep all and singular these agreements, shall forfeit to the other such Earnest money so deposited with O. E. Croson."

Checks were deposited with Croson, the agent who effected the trade, as contemplated by the contract. Afterwards an invoice of the merchandise was taken, which amounted to the sum of $3333.39. As soon as the computation was made Houser asserted that all his goods were not included in the invoice, and insisted on rechecking the items. This Croson and Benfield declined to do at once, because it was then near midnight of Saturday night and they were very tired, and because they had business in Salina which required them to leave Grainfield the next morning. Houser's claim of error in the invoice was not investigated, and he refused to accept a subsequent tender of a deed of the Benfield land and to surrender possession of the stock of goods. Afterwards Benfield sued Croson in Saline county to recover the proceeds of the Houser check. The petition simply alleged that the deposit was made with Croson, to be paid to Benfield in case Houser failed to comply with the terms of a contract in writing, and that he had so failed. Croson interpleaded Houser, who resided in Gove county. He answered, setting up his version of the transaction with Croson and Benfield at the time the invoice was taken, and praying for a return of his money. At the trial the court sustained a demurrer to the plaintiff's evidence, and judgment was rendered in favor of Houser. The plaintiff having died pending the proceedings, the action was revived in the name of his executor, who appeals.

The solution of the controversy depends upon the interpretation to be given the last paragraph of the contract. The plaintiff contends that it provides for stipulated damages. The argument is that neither party cared to proceed with the trade on the bare responsibility of the other; that in case of a breach of the contract the damages would be speculative to a degree rendering certain assessment impossible; that as a result the parties agreed upon a stipulated sum to be paid, regardless of the true damages, and that the true intent ascertained in this way should control, rather than the words "stake as a forfeit" and "shall forfeit."

The court agrees that the parties were not disposed to rely upon each other's credit and that they made no effort to provide for compensation for the true damages which might be sustained should either one fail to perform. It does not agree, however, that the value of a stock of merchandise in Grainfield and the value of a tract of land in Saline county are matters of such uncertainty that an attempt to fix them would necessitate an excursion into the realm of conjecture and speculation. The contract itself declared that Croson was qualified to fix the market price of goods of every description, and the plaintiff produced at the trial witnesses who agreed remarkably well on the value of the real estate involved. It is perfectly well known that stocks of merchandise and tracts of land are common subjects of sale and trade, whose values can be determined with as much precision, by those who deal in them, as values in any branch of commerce. Consequently, when the contracting parties put aside the notion of compensation they evidently adopted the notion expressed by the words of the agreement.

The principles of law governing the subject were stated by Mr. Justice Valentine in the case of *Condon v. Kemper,* 47 Kan. 126, 27 Pac. 829, as follows:

"Of course, the words of the parties with respect to damages, losses, penalties, forfeitures, or any sum of

money to be paid, received or recovered, must be given due consideration; and, in the absence of anything to the contrary, must be held to have controlling force; but when it may be seen from the entire contract, and the circumstances under which the contract was made, that the parties did not have in contemplation actual damages or actual compensation, and did not attempt to stipulate with reference to the payment or recovery of actual damages or actual compensation, then the amount stipulated to be paid on the one side, or to be received or recovered on the other side, can not be considered as liquidated damages, but must be considered in the nature of a penalty, and this even if the parties should name such amount 'liquidated damages.' "    (p. 130.)

Here the land was given a trading value, $4800, and the stock of merchandise was given a trading value, the cost price of each article at wholesale when new. Doubtless each party had his notion of the value of what he was giving, but neither one knew on which side the balance would fall when struck or whether the amount would be large or small.    Therefore each one staked $500 as a forfeit and agreed that if he failed to keep any part of the agreement the stakeholder should deliver the stakes to the other, however great or however inconsequential the actual damages might be.

The action was instituted on July 12, 1907.    On November 19, 1908, the plaintiff filed the amended petition upon which the case was tried.    The demurrer to the evidence was sustained on December 7, 1910.    The plaintiff then asked leave to amend the petition by substituting for the cause of action stated one for actual damages for breach of the contract.    Permission to do this was denied.    The plaintiff could not as a matter of right bring Houser to Saline county to litigate one kind of a case, and then after defeat manipulate the proceeding in such a way as to hold him there and compel him to litigate another kind of a case, the proper venue of which was Gove county.    If, however,

Houser were properly suable in Saline county the court still had discretion over the subject of amendments to the pleadings, and under all the circumstances stated this discretion was clearly not abused.

It is said that the plaintiff should have been awarded nominal damages at least. If so, the refusal to render judgment for nominal damages is not good ground for reversal. (*The State v. Kelly,* 78 Kan. 42, 44, 96 Pac. 40.)

The judgment of the district court is affirmed.