## OKLAHOMA FIRE INS. CO. v. FAY MERCANTILE CO.

No. 5315.    Opinion Filed November 16, 1915.

(153 Pac. 127.)

1    INSURANCE—Standard Policy—Agreement to Extend—Authority of Agent. Under the provis'ens of the standard form of insurance policy, an agent has no power to bind the company, without its authority, by an agreement with the assured that he will extend the policy on its expiration. '

2.    SAME. A policy of fire insurance was issued on November 2, 1910, which expired at noon November 2, 1911, and at the time it was issued, and also subsequently to that time, the agent agreed with the insured that when the policy expired he would renew it. The agent forgot to do so, and the property was burned on the night of November 2, 1911, and on the next day the agent, with the knowledge of the insured, issued a renewal policy, dated November 2, 1911, and did not report any of the facts to the company. **Held,** that the oral promise to renew, under the terms of the policy, was beyond the scope of the agent's authority.

(Syllabus by Devereux, C.)'

*Error from Superior Court, Custer County;*
*J. W. Lawter, Judge.*

Action by the Fay Mercantile Company, a corporation, against the Oklahoma Fire Insurance Company, a corporation. Judgment for plaintiff, and defendant brings error. Reversed and remanded, with directions to dismiss.

This was an action on a policy of fire insurance alleged to have been issued by the plaintiff in error to the defendant in error. It appears that the defendant in error effected insurance on November 2, 1910, on this property, which expired at noon on November 2, 1911, and that the property was destroyed by fire on the night of November 2, 1911, after the expiration of the policy dated November 2, 1910. The defendant in error, however, alleged that it

had a verbal contract with the agent of the plaintiff in error to renew this policy at the time of its expiration, and, a jury having been waived, and all issues of fact submitted to the court, it made the following findings of fact on this question:

"The court finds that on November 2, 1910, the defendant company issued to plaintiff an insurance policy upon the buildings located upon lot 1, block 13, in the town of Fay, Okla., and the merchandise, stock, fixtures, and all other personal property therein, to expire on November 2, 1911, at noon, the policy being for $5,500 in all, and like in all respects to the policy introduced in evidence in this action as Exhibit A, a copy of which is attached to plaintiff's petition.

"That at the time of the issuance of this policy on November 2, 1910, one G. C. Wheeler was the local recording agent of the defendant, at Fay, Okla., and was also cashier of the Fay State Bank, in which bank plaintiff kept a daily deposit of cash and did its banking business there, and that said G. C. Wheeler had no other insurance agency nor other company.

"The plaintiff at the time of the issuance of the policy on November 2, 1910, and at subsequent times thereafter, requested the said G. C. Wheeler to be sure and keep up said insurance and to issue a new policy of like kind, amount, and character in all respects upon the expiration of said policy of November 2, 1910, which expired November 2, 1911, at noon, and instructed said G. C. Wheeler, as cashier of said bank, to take from its moneys on deposit and charge it with the premium for said insurance, and said G. C. Wheeler, as agent of defendant company, agreed to keep up said insurance in defendant company for $5,500, divided as to amounts in the same manner as the policy of November 2, 1911, as mentioned in Exhibit A, and to charge the premium to plaintiff's said account in the Fay State Bank, wherein said

agent, G. C. Wheeler, was the cashier and also the agent for the defendant company. * * *

"The defendant's said agent, G. C. Wheeler, was its duly authorized and recording agent on November 2, 1911, at noon of said day, and had funds of plaintiff under his control sufficient to pay the $148.50 premium on the $5,500 insurance in the defendant's company upon said buildings and the merchandise therein contained, and had authority then to issue said insurance and to charge plaintiff's account with said premium, but neglected to renew said policy of November 2, 1910, expiring November 2, 1911, at noon, or reissue a like policy as he had orally agreed to do.

"On November 2, 1911, at 9 p. m., a fire occurred which totally destroyed the said building to the rear of the main building, and it then had an actual cash value of $400. The fire also destroyed the following goods in said addition, which had the values as herein stated, and a total value. including 10 per cent. for freight, of $1,-163.13, and the defendant had failed to keep up the insurance hereon as by its agent, G. C. Wheeler, it had agreed to do.

"On November 3, 1911, the attention of said agent was called to his oral agreement to keep the insurance up, and in pursuance thereon issued the policy introduced herein as Exhibit A, and remitted to the company $148.50 premium paid by the plaintiffs, but did not report the facts about issuing same after the fire, and defendant's officials, other than said G. C. Wheeler, did not have knowledge thereon until plaintiff's amended petition was filed."

The court also found that the plaintiff in error had, at all times, denied any liability under its policy, and there were other findings of fact; but, in the view we take of the case, it is not material to set them out.

In regard to the oral contract to renew, made with the agent, the petition, after setting out the facts in re-

gard to the policy of November 2, 1910, alleged that about two months thereafter, the plaintiff entered into an oral contract with the defendant, through its agent residing at Fay, to renew the insurance before the expiration of the policy of November 2, 1910, upon the same terms, and upon the same buildings and fixtures, and merchandise, and for the same amount, as in the policy of November 2, 1910. The policy, which is attached to the petition, contains the usual provision that no officer, agent, or other representative of the company shall have power to waive any provisions or conditions of the policy, except such as by the terms of the policy may be subject to agreement to be indorsed thereon. In regard to renewal, it contains the following provision:

"This policy may by renewal be continued under the original stipulations, in consideration of premium for the renewed terms, provided, that any increase of hazard must be made known to this company at the time of renewal or this policy will be void."

There was a judgment for the plaintiff, and the defendant brings the case to this court by petition in error and case-made.

*Burwell, Crockett & Johnson,* for plaintiff in error.

*George T. Webster,* for defendant in error.

Opinion by DEVEREUX, C. (after stating the facts as above). The question presented is whether the agreement of the agent to renew the policy of November 2, 1910, made as alleged in the petition, ten months before it expired, is binding on the insurance company. It will be noted that this case does not present the question of an oral contract by the agent for present insurance, but only a promise that when the policy expires he will renew it.

Ostrander on Insurance, page 39, states the rule in this regard as follows:

"No agreement to insure at some future time, although definitely stated, will be enforceable. The contract, when completed by the distinct assent of both parties to all its terms, will be binding for a future insurance; that is to say, the insurance may take effect at some future time, but the contract must be complete *in praesenti*. In other words, it must be a contract of insurance, not an agreement to insure at some time in the future. In an agreement as to future insurance from the nature of the business and the circumstances of change and uncertainty which affect all classes of perishable property, contingencies may arise that would make performance impossible. A simple illustration will make plain this proposition. Suppose Brown to be a general agent of an insurance company, having full power to negotiate insurance, and to bind his company by contracts entered into either in writing or by parol, and agrees on the 20th of December with Smith, the owner of a building, that he will insure it on the 1st day of January following in the sum of $5,000, for the term of one year; the premium to be $50 and to be paid on the delivery of the policy. Thus the terms are all agreed upon. The minds of the parties have met in regard to every essential fact to the consummation of the contract, but there are possible contingencies involved which would deprive the agreement of any legal force. Suppose, for instance, the building should be destroyed by flood, hurricane, or even fire, on Christmas. When the time arrives that the contract is to become operative, the subject of insurance is no longer in existence. There is nothing to which the policy can attach. What, under the circumstances, would be the situation should the agent, in carrying out his agreement with Smith, issue a policy, and demand the stipulated premium? Could he enforce by suit a demand so absurd? Most certainly not. Nor is it clear that the case would be different if the policy had been written and delivered at the time of the

agreement (December 20th) and a note given for the premium, payable, say, January 1st. Payment could be refused for want of consideration, the property having been destroyed before the risk began to run. We have shown in a preceding section that, when there is no obligation to pay a premium, there is no liability to pay a loss. But again the tenure of Brown's agency is uncertain. His authority to make contracts may be terminated at the will of his principal. He has agreed with Smith to execute a contract of insurance ten days in the future; and suppose, during the interim, his power is withdrawn, and when the time arrives for him to perform his agreement he is wholly without authority to act. Nor would the case be changed in any of its essential features should the sudden death of the agent prevent the execution of the contract of the 1st day of January. Smith, too, might voluntarily dispose of the property by sale, or it might be sold under legal process, and the relations so changed that he would no longer have an insurable interest. In either event, he could not be held liable to pay the agreed premium to the company which Brown represented. The agreement for his future insurance is purely a personal matter between Brown and Smith, and, should either fail in performance, it is a matter in which the insurance company has no concern. Should Brown neglect or refuse to carry out his agreement to insure the property when the time came to consummate the contract, and a loss should subsequently occur, he would, perhaps, be liable to Smith in an action for damages. Of this, however, we express no opinion, as it is not a subject for discussion properly within the scope of this work."  .

Clement on Fire Insurance, vol. 2, p. 499, speaks as follows:

"A general agent, with usual commission, or written authority under the New York standard form, has no power to make a binding contract when he issues a policy that he will keep the same renewed or in force. Neither such commission nor the pol'cy contemplates or author-

izes an executory oral contract to insure property in the future. Such a promise may be the individual contract of the agent, but not of the company, and to bind the agent personally, there must be all the elements of a contract, such as acceptance of a distinct proposition."

, *Shank v. Glens Falls Ins. Co.*, 4 App. Div. 516, 40 N. Y. Supp. 14, is very similar to the case at bar. In that case, the evidence was as follows:

"Then I repeated to him that I wanted him to keep it renewed, and he said that he would. I repeated it two or three times. Then when he got ready to go away I repeated it again. He said he would, and then I told him I did not understand business very much, and I always left it to agents to see to it for me. He said, 'Yes,' he would see to it. Then I said to him that I did not want it to run out as long as I held it, because I talked of selling it. * * * Then I asked him again, I said, 'Now, I will not have to pay any attention to this?' and he said, 'No.' * * Then I said to him, 'Then I won't have to look after this at all?' He said, 'No,' that was his business."

The policy in that case contained the same provisions above set out, and the court says:

"A contract of insurance is one thing, and a contract to insure is quite another. The former is executed and takes effect immediately, while the latter is executory. * * * By the express terms of the policy it expired April 12, 1894, and the provision above quoted excludes the idea that an agent may orally contract that a policy may continue in force beyond the period when by its terms it expires. The terms of the policy do not provide that oral contracts to renew the policy 'may be the subject of agreement,' and such a promise, had it been * * * indorsed, would not bind the company, unless ratified by it. * * * Again, the promise testified to is not, in form or sub-

stance, the promise of the defendant, but the individual promise of Coburn."

Without quoting at length from them, the following cases fully support the doctrine laid down by Mr. Ostrander that a parol contract for insurance must be *in praesenti*, and must be a contract of insurance, and not an agreement to make a contract of insurance at some future time: *Taylor v. Phoenix Ins. Co.*, 47 Wis. 365, 2 N. W. 559, 3 N. W. 584; *Idaho Forwarding Co. v. Fireman's Fund Ins. Co.*, 8 Utah, 41, 29 Pac. 826.

Another view of the question is equally fatal to the defendant in error. The policy provides that no officer or agent shall have the power to waive any condition or provision of the policy, except such as by the terms of the policy may be the subject of agreement indorsed thereon. The contract in regard to renewal is that it may be made, provided that any increase of hazard must be made known to the company at the time of the renewal, or the policy will be void. This provision clearly indicates that, before a renewal, there must be property to insure, and that the hazard has not increased from what it was when the original policy was issued. Can it be seriously argued that this provision in the contract means that the policy may be renewed after the property has been burned, and when there is nothing to insure? The authority of the agent is limited by the policy, and he can only waive a condition or provision thereon when, by the terms of the policy, they are subject to an agreement to be indorsed on the policy, and there is no agreement in regard to waiving the conditions on which the policy may be renewed. The policy provides that at its expiration it may be renewed, provided any increase of hazard is made known to the insurer, but in this case the agent attempts

to bind the company to issue a renewal by a contract made ten months before the policy expires, and at a time when it is impossible for him to know whether or not the hazard will be increased when the time for renewal arrives. In addition to this, after the property has been burned, with the knowledge of the insured, he issues a post-dated policy, and gives no notice whatever to his principal that the property was burned when he issued the policy, and leaves them in entire ignorance of his agreement to issue the renewal, and of the fact that it was issued after the loss.

We therefore recommend that the judgment be reversed, and the case remanded, with instructions to dismiss the action. *Guthrie & Western R. R. Co. v. Rhodes*, 19 Okla. 21, 91 Pac. 1119, 21 L. R. A. (N. S.) 490.

By the Court: It is so ordered.