## FIDELITY-PHENIX FIRE INS. CO. v. SCHOOL DIST. NO. 10, JOHNSTON COUNTY.

No. 9918—Opinion Filed March 8, 1921.

(Syllabus by the Court.)

**1. Insurance—Fire Insurance—Authority of Agent—Oral Agreement to Renew Policy.**

Where a fire insurance company appoints an agent with authority to receive applications for insurance, pass upon and accept or reject the risk, receive the premium and issue the policy therefor, and on the expiration of policies in force to re-insure said property under a new policy issued by the agent, such person is a general agent for the company and he may, by oral agreement to renew a policy which has just expired, bind his principal by such oral agreement.

**2. Same—Failure of Agent to Issue Renewal Policy—Loss by Fire—Action Against Company for Damages.**

Where such agent agrees to issue a policy of insurance or re-insure the property the policy of insurance on which has just expired and the agent fails to issue said policy of insurance, and the person contracting for such insurance suffers a loss, such person may maintain an action in damages against the insurance company said agent is representing to recover the damage he sustained by reason of the failure of the insurance company to issue the policy.

**3. Same—Measure of Damages.**

The measure of damage in such case would be the amount the plaintiff would have been entitled to recover under the policy of insurance had the same been written.

**4. Same—Contract for Renewal of Policy—Sufficiency of Evidence.**

The evidence examined, and held, that it is sufficient to constitute a contract for the renewal of the policy of the insurance, and the jury having found in favor of the plaintiff, this court will not disturb the findings of the jury where there is sufficient evidence to support such findings and verdict.

**5. Appeal and Error—Harmless Error—Instructions.**

Where it is manifest by the verdict that the jury was not misled by the giving of an erroneous instruction, and no prejudicial error was committed, the case will not be reversed because of such erroneous instruction.

**6. Appeal and Error—Damages for Failure of Insurance Company to Issue Fire Policy—Verdict—Evidence.**

The amount of damages awarded to plaintiff by the jury is supported by the evidence, and the verdict having received the approval of the trial court trying the cause, the verdict will not be disturbed because the jury might have found a different amount of damages under the testimony of a witness for the plaintiff.

Error from District Court, Johnston County; J. H. Linebaugh, Judge.

Action by School District No. 10, Johnston County, against the Fidelity-Phenix Fire Insurance Company, a corporation, to recover damages for loss sustained by a fire which destroyed the school building and fixtures of the plaintiff, because of the breach of an oral contract with the agent of the defendant insurance company, in which contract the agent of defendant had orally agreed to issue a policy of insurance on the school building and fixtures and had neglected so to do. Judgment for the plaintiff. Defendant appeals. Affirmed.

Scothorn & McRill, for plaintiff in error.

Cornelius Hardy, for defendant in error.

MILLER, J. In this action school district No. 10 of Johnston county, Oklahoma, plaintiff, alleged that the defendant, Fidelity-Phenix Fire Insurance Company, a corporation, by and through its agent, J. F. Pate, orally agreed to renew a certain policy of insurance known as policy No. 1100, on the school building, furniture, and fixtures of the plaintiff, located at Ravia, Oklahoma. That policy No. 1100 had been issued by the said J. F. Pate as agent of the defendant company, on April 28, 1915, for a period of

one year, expiring on the 28th day of April, 1916, at 12 o'clock noon of said day. That the agreed price or premium for said insurance was $51. That said policy No. 1100 contained this provision for renewal:

"This policy may by a renewal be continued under the original stipulations, in consideration of premium for the renewal term, provided that any increase of hazard must be made known to this company at the time of renewal or this policy shall be void."

That on the 29th day of April, 1916, at about eleven o'clock a. m., school district No. 10, by and through its director, W. C. Holland, made an oral agreement for the renewal of said policy; that said policy was to go into effect at twelve o'clock, noon, on the 29th day of April, 1916, for a period of one year, which would expire at noon on the 29th day of April, 1917. That the said J. F. Pate, as agent of said defendant company, agreed to issue said policy. That on the night of the 29th day of April, 1916, at about 9:30 o'clock, the said building and fixtures therein contained were totally destroyed by fire. The company was duly notified of the loss on the 11th day of May, 1916. The plaintiff asks for judgment in the sum of $6,218.66, together with interest at the rate of six per cent. per annum from the 29th day of April, 1916.

The defendant filed a duly verified amended answer in which it denied that J. F. Pate was the agent of the company for the doing of things alleged in plaintiff's petition and denied that he had any authority as agent of the defendant company to do the acts alleged in plaintiff's petition. The defendant, as a second defense, alleged that the plaintiff did not have authority under the Constitution and laws of the state of Oklahoma to enter into a contract with the defendant for insurance at the time it alleges the contract for the insurance was made, for the reason that on the 29th day of April, 1916, the said school district had created indebtedness in excess of the income and revenues provided for and had made no provision to pay the money required for premium on said policy.

On the trial of the case the record evidence disclosed that the plaintiff school district had not created indebtedness in excess of its revenues and income provided for, and this defense was abandoned by the defendant company.

The case was tried to a jury, which returned a verdict for $6,218.66, and judgment was rendered on the verdict. The defendant filed its motion for a new trial, which was by the court overruled, exceptions saved, and notice of appeal given and this appeal perfected.

The plaintiff in error makes five assignments of error; then, setting out the first four of its assignments in its brief, states as follows:

"(1) The trial court erred in overruling plaintiff in error's motion for a new trial.

"(2) The trial court erred in overruling plaintiff in error's motion for an instructed verdict.

"(3) The verdict of the jury is contrary to law.

"(4) The judgment of the court is not sustained by sufficient evidence and is contrary to law.

"There is really only one question involved in this appeal, and that is whether or not a contract of insurance was entered into between the plaintiff and defendant. We shall therefore discuss the first four assignments of error together.

"We respectfully submit that no contract of insurance was ever entered into between the parties."

W. C. Holland testified that he resided at Ravia, Johnston county, Oklahoma; was chairman of the school board of said school district No. 10. He was acquainted with J. F. Pate, the agent of said insurance company. That on the 28th day of April, 1916, he was at Chickasha and arrived in Ravia on the 29th day of April, 1916, at 10:40 a. m. He went to the bank to deposit some checks and there had a conversation with Mr. Hathorn, who was clerk of the school board of said district. After said conversation, he went to the postoffice to see Mr. Pate, who was agent of defendant company, and was also postmaster; he there had the following conversation with Mr. Pate:

"Q. I will ask you to state what the conversation was that you had there with Mr. Pate? A. I went in and I said, 'I understand. Mr. Pate, our insurance is out'; and he said, 'I went over to see Mr. Hathorn yesterday and he said they didn't have any money'; and I said. 'Well, it won't do for us to do without insurance; we are running too much risk'; and he said, 'Well Brother Holland. I could carry the insurance a while'; and I said, 'Well, maybe we could borrow the money from the bank and continue it and pay you back'; and about that time Mr. Wilkerson came to the window and he said, 'Brother Holland is in here'; and after they had a talk— Q. Who said? The Court: Was Pate present? A. Yes, sir. The Court: Go ahead. A. And he said. 'Well. he would telephone him when his policy was out'; and I said, 'Mr. Pate, we must have this insurance renewed'; and he said, 'Well, as soon as I hear from Mr. Wilkerson I will renew it'; and I left, and the next morning I telephoned Mr. Pate and I said, 'Did you write up that

insurance?'; and he said, 'If I had, Brother Holland, if I had, it would not have been no count'; and then I met him the next morning and he said, 'I didn't write up that insurance; if I had it wouldn't have been no count.' Q. What was that understanding in that conversation as to the amount of insurance that he was to write for you? A. I was under impress—Mr. McRill: We object to your impression—that he was to carry just what he had.    Mr. McRill: Just state what he said.    Q. You requested him to renew the policy that had expired, did you? A. Yes, sir.    Q. And he told you that after Mr. Wilkerson telephoned him that he would do it?    A. Yes, sir; he said as soon as he heard from Mr. Wilkerson."

Mr. Holland then identified the policy No. 1100 as the one he and Mr. Pate had the conversation about renewing, and said that he notified the defendant insurance company on the 11th day of May, 1916, and the defendant company wrote him denying any liability.

It was conceded there was concurrent insurance on the building in the sum of $5,000, and that the insurance company would only be liable for three-fourths the value of the building and fixtures on account of the provision of the three-fourths liability clause contained in the contract.

Mr. Holland further testified as follows:

"Cross-Examination.

"Q. You didn't offer to pay him any money for insurance, did you, Mr. Holland? A. No, sir.    Q. You didn't leave him any warrant, did you? A. No, sir.    Q. What did you say to Mr. Pate about the money? A. Well, the only statement I made was that he had had to carry it a while and I said we could borrow it from the bank and pay him back.    Q. You expected to go to the bank and borrow money to buy insurance, did you? A. Well, we could have done it, sir.    Q. Had you ever done that before? A. No, sir; I never did.    Q. Had the district ever before gone to the bank and borrowed money to buy insurance? A. No, sir.    Q. You told Mr. Pate that the school district might go to the bank and borrow money to pay for this insurance? A. Yes, sir.    Q. You understood that the insurance had expired, did you? A. Yes, sir, as soon as I come home I did.    Q. On the 28th? A. Yes, sir.    Q. What was said between you and Mr. Pate about Mr. Pate or Wilkerson carrying all of the insurance? A. I didn't know anything about Mr. Wilkerson carrying it at the time.    Q. You didn't know that he had other insurance on the building? A. That is what we were waiting to see Mr. Wilkerson—    Q. What was said? A. He said, 'Just as soon as I hear from Mr. Wilkerson I will renew this policy.'    Q. What did Mr. Pate say about carrying the whole of the insurance himself? A. He didn't say anything

about carrying the whole insurance, to me.    Q. You do not remember about the other insurance? A. No, sir.    Q. Did Mr. Pate say that he was going to go borrow money to buy your insurance with?    A. No, sir.    Q. Did you say anything to him about borrowing money for you? A. No, sir.    Q. You had not talked to Mr. Wilkerson about the insurance, had you, or not?    A. No, sir."

J. H. Wilkerson, who was in the insurance business at Ravia, testified that on the morning of the 29th day of April, 1916, he had a conversation with Mr. Pate at the post office and that Mr. Holland was there, and then testified as follows:

"Q. Now, I will ask you to state what conversation, if any, you had with Mr. Pate, at that time? A. I came in after my mail and Mr. Pate called me and asked me when my policy expired on the school and I told him I did not know, and that I was going right over to the store and I would look it up and call him, and I got my mail and went on over to the store and got my book and looked it up and called him up and told him, and he said all right."

E. K. Hathorn testified to going to the fire and meeting Mr. Pate and having a conversation with him, and his testimony is as follows:

"Q. Did you have any conversation with him when you met him, Mr. Hathorn? A. Yes, sir.    Q. State what it was? A. Well, I could not remember all of the conversation —I met him and we were talking about the fire and about a murder that had been committed there that night, and he told me that he didn't write the insurance on the building."

Mr. Pate testified in behalf of the insurance company; that he had a conversation with Mr. Holland about the insurance and about him carrying it for a while; that he did sometimes carry the insurance himself, but not as agent, but he could write the insurance; he did not have to remit when he executed the policy; that he could carry the premium until he did remit, and he could even carry it after that, and had done so in a few cases. He did not deny any of the conversation as testified to by Mr. Holland.

The plaintiff in error contends that under the law this evidence does not establish a contract for insurance, and cites numerous authorities, which we will now refer to.

"There is no contract of insurance unless the minds of the parties have met in agreement as to (a) the subject-matter, (b) the risk insured against, (c) the period of risk, (d) the amount of insurance, and (e) the premium." Dorman v. Connecticut Fire Ins. Co., 41 Okla. 509, 136 Pac. 262.

The above cited case was where the only authority the agent had was to receive ap-

plications for insurance and forward them to the company. In the body of the opinion the court makes this statement:

"Mulligan and Nash, who had no actual authority to issue policies or enter into contracts of insurance, and were merely traveling solicitors for and takers of applications and premiums in Grant county, Okla., addressed to defendant for such insurance, on the next following day, May 20, 1909, at Pond Creek, in said county, presented said application to said Sullivan, an agent with office there, and authorized to accept or reject such applications and enter into contracts of insurance. On the third day next thereafter, May 23, 1909, plaintiff suffered the loss for which he sues. When Mulligan and Nash, on the third day before the loss, presented the application to Sullivan, the latter first objected to it, and marked it 'Refused' because it was for insurance upon the equivalent of 60 acres of wheat on one section of land in excess of the 100-acre limit which the rules of the defendant imposed; but, upon the suggestion of Mulligan and Nash, Sullivan immediately indicated a willingness to hold it pending an opportunity to present it to Mr. Rushmore, defendant's state agent, for his instruction upon it, in the belief that he might consent to its acceptance notwithstanding such excess; and the said application was being so held, and was still not accepted by Sullivan nor presented to Rushmore on the fourth day after the day of its date, when plaintiff's loss occurred; the premium being held in the hands of Nash or Mulligan, or both." Dorman v. Connecticut Fire Ins. Co., 41 Okla. 509, 136 Pac. 262.

Plaintiff in error then cites McCracken v. Travelers' Insurance Co., 57 Okla. 284, 156 Pac. 640, and Shawnee Mutual Fire Ins. Co. v. McClure, 39 Okla. 535, 135 Pac. 1150, 49 L. R. A. (N. S.) 1054, and quotes as follows:

"To constitute a binding contract of insurance, there must be a meeting of the minds of the parties, with authority to contract as to the premises and the risk, the amount insured, the term the insurance is to continue, and the amount of the premium."

We quote the syllabus in the case of McCracken v. Travelers' Insurance Co., supra, as follows:

"The issuance and delivery of an insurance policy is not essential to establish liability upon an insurance contract, which may rest in parol, but where no policy is issued or delivered, it is essential to show that a contract of insurance was entered into.

"The making of an application for insurance, subject to the approval or rejection of the company to which it is made, is merely a step in the creation of a contract to insure. When the application is made out and forwarded to the company, it is not yet a contract of insurance; it has then only attained the position of a proposition on one side. It requires an acceptance by the other side before it can be said that the minds of the parties have met upon the terms of a contract to insure."

Counsel cite other cases along the same line, and then cite the Idaho Forwarding Co. v. Fireman's Fund Ins. Co., 8 Utah, 41, 29 Pac. 826; but the gist of that action is that Mallory, who was cashier of plaintiff, neglected his employer's instructions, and did not appropriate the money to pay for the insurance as he was instructed to do. The Idaho Forwarding Company should make the first move to effect the insurance, and Mallory's failure to do this was not the negligence of the insurance company through its agent, but the negligence of the Idaho Forwarding Company's agent, Mallory, in failing to follow the instructions of his principal. This is shown in the body of the opinion.

"The proof is that Mallory, who was cashier of the plaintiff, and who was authorized and instructed by its manager to have its stock of goods insured, and who was also the agent of the defendant, and authorized by it to make contracts of insurance and to issue policies, neglected to do as he was instructed, and what he promised plaintiff's manager he would do. He had an impression, as he said, that the property was insured, and neglected to issue the policy. He was authorized to appropriate plaintiff's money, in his hands as its cashier, to the payment of the premium, but neglected to do that. If he had done so, he would have acted as plaintiff's agent in so doing. At the time of the conversation, about the 1st of February, relied upon to establish the contract declared on, insurance then on the property to be renewed had not expired. It did not expire until the 13th day of that month. It was the duty of Mallory, under the instructions of plaintiff's manager, to continue the risk after the old policy expired by reinsuring, but the evidence shows that he neglected to do this. For the failure to follow plaintiff's orders the defendant cannot be held responsible. It is apparent that Mallory failed to make the contract that he was authorized and instructed by plaintiff to make. An agreement to make a contract at a future day is not the equivalent of the one to be made, or of a present contract, though all the terms to be put in the latter are agreed upon. If one of the parties to the first agreement refuses to bind himself when the time comes, the court may compel a specific performance of it, if from the facts it would be equitable to do so; and if performance is decreed a judgment may be entered in the same case for the amount found to be due the plaintiff on the contract, if any amount is then due the plaintiff by its terms, or an action may be instituted on it, if either party refuses to comply with it. By the language used on the 1st of February the defendant did not assume the risk the plaintiff contends that he did. That language had reference to insurance thereafter to be made."

In the case of Shank v. Glens Falls Ins. Co.,

4 App. Div. 516, 40 N. Y. Supp. 14, quoted from by plaintiff in error, it is said:

"A contract of insurance is one thing, and a contract to insure is quite another. The former is executed and takes effect immediately, while the latter is executory. * * * By the express terms of the policy it expired April 12, 1894, and the provision above quoted excludes the idea that an agent may orally contract that a policy may continue in force beyond the period when by its terms it expires. The terms of the policy do not provide that oral contracts to renew the policy 'may be the subject of agreement,' and such a promise had it been * * * indorsed, would not bind the company, unless ratified by it. * * * Again, the promise testified to is not, in form or substance, the promise of the defendant, but the individual promise of Coburn."

Counsel for plaintiff in error say:

"The case of Whitman v. Milwaukee Fire Insurance Company, 128 Wis. 124, 107 N. W. 291, 5 L. R. A. (N. S.) 407, is especially illuminating in this connection. We quote at length from the opinion delivered by Justice Marshall:

"'It is considered, the determination of the court below, as to there being an entire absence of evidence warranting the jury in reasonably coming to the conclusion that a contract of insurance was made between respondent and the Laufenbargs, cannot be disturbed. It is absolutely essential to any contract that the minds of the persons representing the two sides of the matter shall consensually meet upon the major proposition constituting the same; upon a particular result to be accomplished, involving mutual obligations for future performance, or a consideration moving in praesenti from one to the other as an equivalent for something later to be rendered for such other or some person to the former or some one. Contracts of insurance form no exception to this. One of the prime essentials of such a contract is the time of the commencement of the risk. We fail to find any proof that such element was agreed upon in the instance under consideration. It was not even mentioned. One of the Laufenbargs testified at one time during the trial that the agent promised that the insurance should take effect at noon on the day the application was made, but he later admitted that such was not the fact; that a remark of that kind was made to him by the agent on a former occasion of insuring the property, but that on the one in question nothing whatever on the subject was said. So the want of evidence on that point in appellant's favor, with the evidence against him, shows most conclusively that no contract in praesenti was thought of at the time the application was made. The real transaction, according to the testimony of Laufenbarg, was an agreement that the agent would attend, in due time, to the matter of taking such further steps as were

necessary to effect the insurance, subject to the action of respondent. No money was paid. The only assurance given by the agent, as said by Laufenbarg, was that the former "would see to it, take care of it so it would be all right", and would "get a policy." That is consistent only with the idea that the only contract of insurance in contemplation was one to be evidenced by a policy issued in the usual way.

"'As indicated in Taylor v. Phoenix Ins Co., 47 Wis. 365, 2 N. W. 559, 3 N. W. 584, the presumption arising from the ordinary transaction of making a written application for insurance is that the actors in the transaction had in mind a contract to be closed at some subsequent time. The first step is not supposed to involve binding contractual relations; it suggests only future probabilities in that regard. To displace that, by establishing, as a fact, that something out of the ordinary was contemplated, the actual closing of a contract, precedent to the issuance of a policy in the ordinary way such contracts are made, pretty clear evidence is required showing that the minds of the parties met on that precise proposition. Evidence that the circumstances characterizing an application were closed by a mere promise on the part of the agent to attend to the matter of obtaining a policy of insurance is, as suggested in the case cited, proof that no contract of insurance was supposed to be closed in praesenti.

"'We need not continue the discussion. The principle involved is pretty fully illustrated in Wood v. Prussian Nat. Ins. Co., 99 Wis. 497, 75 N. W. 173, and the early case of Strohn v. Hartford F. Ins. Co., 37 Wis. 625, 19 Am. Rep. 777. In the first case cited it was said that an oral contract of insurance, like any other, requires a meeting of minds as to all of the essential provisions, leaving nothing to be done but to execute it. The evidence required to show such meeting of minds, when the nature of the contract is of such extraordinary character as that of an oral one of insurance, must necessarily be pretty definite. It takes evidence sufficient to satisfy the mind to a reasonable certainty to establish in a court of justice the affirmative as to any matter in dispute. When such affirmative character has taken place, circumstances which ordinarily characterize a common transaction of a particular sort must necessarily be supplemented by other circumstances of considerable weight, to show that a radically different transaction was in the minds of both parties in the particular instance. There are no such circumstances here. Rather, there is positive evidence, and circumstances as well, confirmatory of the idea that the Laufenbargs simply made an application for a policy of insurance."

This case is not like the case at bar. Pate made the positive statement, "As soon as I hear from Mr. Wilkerson I will renew it."

We again quote from the brief of plaintiff in error:

"We invite the court's especial attention to the case of Taylor v. Phoenix Insurance Company, 47 Wis. 365, 2 N. W. 559. We quote from the opinion as follows:

. " 'The proof of the alleged contract of insurance is all contained in the following testimony of the plaintiff. After testifying to a conversation with Mr. Towne before the policy expired, concerning its renewal, he proceeded as follows:

" ' "Afterward, and on the eighteenth day of June, I had a conversation with Towne about renewing the policy. I met Towne in front of the postoffice, and said to him: 'I want to renew that insurance of mine; I am going away to be gone a week or ten days, and I want it done before I leave.' He said: 'All right.' I then said: 'Mr. Hopkins offers to insure my property at 2 per cent. and you charged me 2½ last year; I don't want it in those local companies; I would rather have it in the same company, and have it renewed; won't you do it for 2 per cent.?' He answered: 'I will.' I said again: 'I am going to leave for Palmyra and Brodhead, and to be gone a week or ten days; is there anything else you want me to do?' 'No, nothing else; I have the description in my office and will attend to it.' I said to renew the old insurance policy the same as it was before, in the same company, and the same amount, and he said: 'All right.' I went away that day and returned again in about ten days, on the day before the fire."

" 'We fail to find in the above testimony satisfactory evidence of a renewal of the policy in praesenti. The purport of all the conversation on the subject between the plaintiff and Mr. Towne was that the policy should be renewed thereafter; not that it was then renewed. The plaintiff said to the agent that he wanted it renewed, and desired that it should be renewed before he left home. The agent assented. They then agreed upon the premium to be paid therefor. The agent said there was nothing more for the plaintiff to do, but that he (the agent) had the description of the property to be insured in his office, and promised to attend to the matter of the renewal. The plaintiff then directed the agent to renew the old policy the same as it was before—in the same company and for the same amount—and the agent promised to do so. That is all there is of the alleged parol contract of renewal. It seems to us that the whole conversation pointed unmistakably to some further act to be done to renew the policy—to a renewal in future. Else why the talk about the agent having the description in his office, and his promise to attend to the business? And why the closing direction to the agent to renew the old policy in the same company and for the same amount? If the policy was then and there renewed the description ceased to be material and the promise was superfluous, as

was also the final direction to the agent to renew. Indeed both the promise and direction tend strongly to prove, if they do not prove conclusively, that neither of the parties intended a contract of renewal in praesenti, or supposed they had made any contract other than an executory oral contract that the company should renew the policy, and the plaintiff should pay the premium at some early future time. There is no evidence whatever, inconsistent with the hypothesis that the agent was to make a certificate of renewal, and the plaintiff was to pay the premium as conditions precedent to the renewal; or to show that the parties intended a contract out of the usual course of the business of insurance.

" 'It is our duty to construe the alleged parol contract as established by proofs, and we are constrained to say that it is not a contract of insurance in praesenti, and contains no waiver of conditions contained in the policy sought to be renewed.' "

This is an opinion by a divided court, and we do not agree with the majority opinion in this case. We think the reasoning there given is not the logical conclusion to be deduced from the premises.

"The case of the Oklahoma Fire Insurance Company v. Fay Mercantile Company, 52 Okla. 446, 153 Pac. 127, is, we think, decisive of the question before us. The court quotes at length from Ostrander on Insurance, page 129, and we reproduce that quotation because it so clearly sets forth the provisions here involved:

" 'No agreement to insure at some future time, although definitely stated, will be enforceable. The contract, when completed by the distinct assent of both parties to all its terms, will be binding for a future insurance; that is to say, the insurance may take effect at some future time, but the contract must be a contract of insurance, not an agreement to insure at some time in the future. In an agreement as to future insurance, from the nature of the business and the circumstances of change and uncertainty which affect all classes of perishable property, contingencies may arise that would make performance impossible.' "

Counsel failed to quote the facts in the Oklahoma Fire Insurance Company v. Fay Mercantile Company, and, when considered in the light of these facts, it has no application here. We quote paragraph 2 of the syllabus:

"A policy of fire insurance was issued on November 2, 1910, which expired at noon on November 2, 1911, and at the time it was issued, and also subsequently to that time, the agent agreed with the insured that when the policy expired he would renew it. The agent forgot to do so, and the property was burned on the night of November 2, 1911, and on the next day the agent, with the knowledge of

the insured, issued a renewal policy, dated November 2, 1911, and did not report any of the facts to the company. Held, that the oral promise to renew, under the terms of the policy, was beyond the scope of the agent's authority."

The cases relied upon by counsel for plaintiff in error deal either with an application for insurance which is made subject to the approval of the company, or an oral agreement to execute a policy sometime in the future upon expiration of the original policy, and the actions are brought to recover on the policy as though it had been issued.

The case at bar differs from the cases cited by plaintiff in error. While the petition of school district No. 10 is not as clear and specific as it might have been, yet it appears from the petition that the plaintiff's action is to recover damages for failure of defendant company to issue the policy. The petition is very voluminous, reciting what the agreement was, the kind of policy which was to have been issued, which was to have been the same form as policy No. 1100 which had expired the day before and to cover the same property at the same rate of premium and for a period of one year. Stripped of all its descriptive and ornamental features, the petition states the cause of action substantially as follows:

That on the 29th day of April, 1916, at 10:30 or 11 o'clock in the forenoon, the plaintiff, school district No. 10, applied to J. F. Pate at Ravia as agent of defendant fire insurance company for an insurance policy to be issued at once on the school building and fixtures on the same terms and conditions as said policy No. 1100. The defendant by its said agent then and there agreed to become an insurer to the plaintiff of said property for one year, commencing at 12 o'clock on the 29th day of April, 1916, in the sum of $4,000 on the building and $2,800 on the fixtures, and the said defendant agreed to execute and deliver to the plaintiff the policy, and the policy was to be the same in substance and form as said policy No. 1100. Plaintiff's last paragraph in the petition before the prayer then states:

"That the plaintiff now and here tenders into open court the sum of $51.00 the amount of the premium due upon said contract of insurance as provided by the terms of said contract and which the defendant has heretofore refused to receive."

Plaintiff's petition states a cause of action in damages for breach of contract in failing to issue the policy as agreed upon between plaintiff and defendant insurance company. In the paragraph of plaintiff's petition above quoted, he tenders into court $51, the

premium due upon said contract of insurance as provided by the terms of said contract. The words "terms of said contract" relate back to the contract entered into about 11 o'clock on the morning of April 29, 1916, when the defendant, by its agent, agreed to become an insurer to the plaintiff of said property.

The case was tried upon this theory. Mr. Holland's testimony was that he told Mr. Pate that "we must have this insurance renewed," thereby showing that the amount, form of policy, premium and terms, were all understood; and Mr. Pate replied, "Well, as soon as I hear from Mr. Wilkerson I will renew it." This was a contract in praesenti to renew the insurance on this property on the same terms and conditions as policy No. 1100.

J. F. Pate, the company's agent, was not limited to taking applications; he had authority to issue policies of insurance. Having this authority, he had authority to contract to issue the policy; or, a policy having expired, he had authority to contract to issue another policy on the same terms and conditions, which was, in effect, a renewal.

A parol agreement, entered into by an agent having authority to accept risks, issue policies of insurance, or renew policies when they expire, becomes the contract of the insurance company, and not of the agent. If said property, so proposed to be insured, is damaged and the loss occasioned thereby would have been covered by said insurance policy if issued according to such agreement, the insurance company is answerable in damages for the breach of its contract to issue the policy of insurance. Commercial Union Ins. Co. v. State ex rel. Smith, 113 Ind. 331, 15 N. E. 518; Commercial Mutual Marine Ins. Co. v. Union Mutual Ins. Co., 19 How. 321, 15 L. Ed. 636; First Baptist Church v. Brooklyn F. Ins. Co., 19 N. Y. 305; Ellis v. Albany City F. Ins. Co., 50 N. Y. 402, 10 Am. Rep. 495; Angell v. Hartford F. Ins. Co., 59 N. Y. 171, 17 Am. Rep. 322; McCabe v. Aetna Ins. Co., 9 N. Dak. 19, 81 N. W. 426; Rockwell v. Ins. Co., 4 Abb. Pr. 179; Stickley v. Mobile Ins. Co., 37 S. C. 56, 16 S. E. 280, 838; Baubie v. Aetna Ins. Co., 2 Dill. 156, Fed Cas. No. 1, 111; Taylor v. Germania Ins. Co., 2 Dill. 282, Fed. Cas. No. 13, 793; King v. Cox, 63 Ark. 204, 37 S. W. 877; Newark Mach. Co. v. Kenton Ins. Co., 50 Ohio St. 549, 22 L. R. A. 768, 35 N. E. 1060; Croft v. Hanover F. Ins. Co., 40 W. Va. 508, 21 S. E. 854; Hardwick v. State Ins. Co., 20 Ore. 547, 26 Pac. 840; More v. New York Bowery F. Ins. Co., 130 N. Y. 537, 29 N. E. 757.

In the Union Mutual Life Ins. Co. of Maine

v. Wilkinson, 13 Wall. 222, 20 L. Ed. 617, Mr. Justice Miller, speaking for the court, said:

"The agents are stimulated by letters and instructions to activity in procuring contracts, and the party who is in this manner induced to take out a policy, rarely sees or knows anything about the company or its officers by whom it is issued, but looks to and relies upon the agent who has persuaded him to effect insurance as the full and complete representative of the company, in all that is said or done in making the contract. Has he not a right to so regard him? It is quite true that the reports of judicial decisions are filled with the efforts of these companies, by their counsel, to establish the doctrine that they can do all this and yet limit their responsibility for the acts of these agents to the simple receipt of the premium and delivery of the policy, the argument being that, as to all other acts of the agent, he is the agent of the assured. This proposition is not without support in some of the earlier decisions on the subject; and, at a time when insurance companies waited for parties to come to them to seek assurance, or to forward applications on their own motion, the doctrine had a reasonable foundation to rest upon. But to apply such a doctrine, in its full force, to the system of selling policies through agents, which we have described, would be a snare and a delusion, leading, as it has done in numerous instances, to the grossest frauds, of which the insurance corporations receive the benefits, and the parties supposing themselves insured are the victims. The tendency of the modern decisions in this country is steadily in the opposite direction. The powers of the agent are, prima facie, coextensive with the business intrusted to his care, and will not be narrowed by limitations not communicated to the person with whom he deals. Bebee v. Ins. Co., 25 Conn. 51; Lycoming Ins. Co., v. Schollenberger, 44 Pa. 259; Beal v. Ins. Co., 16 Wis. 241; Davenport v. Ins. Co., 17 Iowa, 276. An insurance company, establishing a local agency, must be held responsible to the parties with whom they transact business, for the acts and declarations of the agent, within the scope of his employment, as if they proceeded from the principal. Sav. Bk. v. Ins. Co., 31 Conn. 517; Hortwitz v. Ins. Co., 40 Mo. 557; Ayres v. Ins. Co., 17 Iowa, 176; Howard Ins. Co. v. Bruner, 23 Pa. 50."

This being an action in damages, the following sections of the statutes govern (Rev. Laws of Oklahoma, 1910, vol. 1):

"Section 2845. Any person who suffers detriment from the unlawful act or omission of another, may recover from the person in fault a compensation therefor in money, which is called damages.

"Section 2846. Detriment is a loss or harm suffered in person or property."

"Section 2848. Any person who is entitled to recover damages certain, or capable of be-

ing made certain by calculation, and the right to recover which is vested in him upon a particular day, is entitled also to recover interest thereon from that day, except during such time as the debtor is prevented by law, or by the act of the creditor from paying the debt."

"Section 2852. For the breach of an obligation arising from contract, the measure of damages, except where otherwise expressly provided by this chapter, is the amount which will compensate the party aggrieved for all the detriment proximately caused thereby, or which, in the ordinary course of things, would be likely to result therefrom. No damages can be recovered for a breach of contract, which are not clearly ascertainable in both their nature and origin."

A contract of insurance is in some respects like any other contract. There should be a meeting of the minds of the contracting parties on all of the essential ingredients of the contract. Dorman v. Connecticut F. Ins. Co., supra; Commercial Union Assurance Co. v. State ex rel. Smith (Ind.) 15 N. E. 518.

In this case the evidence discloses there was a meeting of the minds on all of the essential ingredients of the contract. The payment of the premium had been discussed. Mr. Pate said he could carry it for a while. Mr. Holland said they could borrow the money at the bank to pay it. This was understood between them; at least the jury by its verdict found that it was, and there is evidence to support such a finding. The property to be insured, the amount of the insurance on the building and the amount on the fixtures, the term of one year, the rate or premium, the location of the property, and the form of the policy were all embraced in their reference to the policy No. 1100, which had just expired. That policy was to be renewed. In other words, a new policy was to be written just like policy No. 1100, except the date it was to begin and expire would be different. This was understood and agreed upon between the parties when each of them insisted that the school district could not afford to carry the risk and that the policy should be renewed. Each understood it should be renewed that very day, and when Mr. Holland said, "Mr. Pate, we must have this insurance renewed", and Mr. Pate said, "Well, as soon as I hear from Mr. Wilkerson, I will renew it," Mr. Holland immediately left, and that concluded the contract for the insurance between Mr. Holland, as agent for school district No. 10, and Mr. Pate, as agent for the insurance company.

The evidence was sufficient to make a prima facie case in favor of the defendant in error; the trial court's ruling on the demurrer to the evidence was correct.

While the instructions of the court are not very explicit, yet they show that the case was submitted to the jury on the theory that Mr. Pate, as agent of the insurance company, had entered into a contract with the school district, whereby the insurance company agreed to issue a policy of insurance on the property in controversy. After entering into said contract, the insurance company neglected and refused to write the policy of insurance, and the court tells them if they find these to be the facts, it would be their duty to return a verdict for the school district. This is the gist of instruction No. 2, which will be hereinafter set out for further consideration. The jury having returned their verdict in favor of the school district and there being sufficient evidence to support it, and it having received the approval of the trial court, this court will not disturb the verdict of the jury. Taylor v. Ins. Co. of North America, 25 Okla. 92, 105 Pac. 354; Fidelity Mut. Life Ins. Co. v. Stegall et al., 25 Okla. 92, 111 Pac. 389; Midland Saving Loan Co. v. Sutton et al., 30 Okla. 448, 120 Pac. 1007; Penn Mut. Life Ins. Co. v. Spaulding, 50 Okla. 307, 150 Pac. 494; Supreme Tribe of Ben Hur v. Owens, 50 Okla. 629, 151 Pac. 198; Phoenix Ins. Co. of Hartford v. Newell et al., 60 Okla. 207, 159 Pac. 1127; National Council of Knights and Ladies of Security v. Fowler, 66 Oklahoma, 168 Pac. 914.

The measure of damages that school district No. 10 would be entitled to recover under the statute would be the same amount it would be entitled to recover under the policy of insurance had the insurance policy been issued. As we have seen from the statutes above quoted, the fact that the school district asked interest at the rate of 6 per cent. per annum from the 29th day of April, 1916, did not change it from an action to recover damages for the breach of the contract to issue the policy to an action on the contract.

The plaintiff in error next discusses its fifth assignment of error—"The trial court erred in giving the jury instruction No. 2." This instruction is as follows:

"You are instructed that if you find by a fair preponderance of the evidence in this case that the defendant, Fidelity-Phenix Fire Insurance Company, through its agent, J. F. Pate, entered into a contract with the plaintiff, on the 29th day of April, 1916, whereby the defendant agreed to write a policy of insurance for the plaintiff covering the property described in plaintiff's petition, the building and furniture and fixtures and that said policy was for the amount alleged in plaintiff's petition and that after entering into said contract, they, through their agent, failed, neglected or refused to write said policy of insurance, then the court instructs

you that it would be your duty to return a verdict for the plaintiff for whatever amount you find that it was agreed upon in said contract, if you find there was a contract entered into, for the plaintiff. On the other hand, if you should find from the testimony that there was no contract entered into between the plaintiff and defendant, through its agent, Pate, and by which they agreed to write the plaintiff a policy of insurance, it would be your duty to return a verdict for the defendant."

It will be observed this instruction says, "then the court instructs you that it would be your duty to return a verdict for the plaintiff for whatever amount you find that it was agreed upon in said contract."

The amount agreed upon in the contract for the insurance was $6,800. The jury returned its verdict for $6,218.66. This was the amount of loss sustained by the defendant in error and for which the plaintiff in error would have been liable had the contract of insurance been written up by Mr. Pate in accordance with the agreement between him and Mr. Holland, figuring the loss on the three-fourths basis provided for in the insurance policy that was to be issued. It is evident from this verdict that the jury was not misled by this instruction. They would have returned a verdict for $6,800 had they been misled by this instruction. Where it is evident that the jury have not been misled, and where it appears from the evidence that a verdict is so clearly right that had it been different the court should have set it aside, such verdict will not be disturbed merely for the reason that there is an error found in the instructions. Horton v. Early, 39 Okla. 99, 134 Pac. 436, 47 L. R. A. (N. S.) 314, Ann. Cas. 1915D, 825. Whitcomb v. Orler, 41 Okla. 331, 137 Pac. 709; Liverpool, London & Globe Ins. Co. v. McLaughlin, 70 Oklahoma, 174 Pac. 248.

Counsel for plaintiff in error complain of the amount allowed on the personal property consisting of desks, fixtures, etc., and use this language:

"We wish again to call the court's attention to the fact that there are two items in the defendant's original policy; one for $4,000.00 on the building and the other for $2,800.00 on the fixtures; that the three-fourths value clause expressly provides that the company shall not be liable in any amount greater than three-fourths of the actual cash value of each item of the same; that the plaintiff's own evidence shows that the fixtures were worth only about $2,100.00; that even if there was no concurrent insurance on the fixtures the liability of the company on the fixtures item would only be $1,575.00, so that the total liability under the policy, eliminating concurrent insurance,

could not possibly be more than $5,575.00. We call the court's attention to these facts merely to emphasize the error of this instruction. As we have already pointed out, the gross error of the instruction lies in the fact that the plaintiff's evidence does not begin to fix the liability of the company under the alleged policy, and the jury could not from a consideration of the terms of the alleged policy and the evidence introduced, determine the extent of the insurance company's liability, in case they found the company to be liable."

They base this complaint on the evidence of Mr. Holland above quoted. His testimony of the value of the building, including fixtures, being $16,000, and the value of the building without the fixtures being $12,000, this would leave $4,000 as the value of the furniture and fixtures; notwithstanding he made a statement about the fixtures, to the best of his recollection, being $2,100.

A careful analysis of this testimony shows that when he was asked the first question about the value of the building together with the furniture and fixtures—both furniture and fixtures were mentioned—he stated $16,000. He was then asked what would be the value of the building without including the fixtures; he said $12,000 or a little over. The furniture was not included in that question. He was then asked what was the value of the fixtures, and he stated, to the best of his recollection, about $2,100. The furniture was not included in this question. He was then asked of what the fixtures consisted, and stated "the seats, desk, chair, books, maps, charts, and blackboard." In this question he was dealing strictly with fixtures. Then he was asked: "Was the furniture in the building and the fixtures in this building absolutely destroyed by fire?" He answered: "Yes, sir."

They may have had stoves or other articles that Mr. Holland was distinguishing in his own mind as furniture and not included in his statement about the fixtures. He was not asked either upon direct or cross-examination anything about the value of the furniture as separate and distinct from the fixtures, but when he fixed the value of the building, including furniture and fixtures, at $16,000, and the value of the building without including the fixtures, at $12,000, it leaves a difference for furniture and fixtures of approximately $4,000, and we think the evidence is sufficient to support the verdict of the jury and the judgment is therefore affirmed.

HARRISON, C. J., and KANE, JOHNSON, and KENNAMER, JJ., concur.