## Staunton.

TRAVELER'S INSURANCE COMPANY V. HARVEY.

OCTOBER 1st, 1885.

1. INSURANCE COMPANIES—*General agent.*—Where addendum to policy requires notice of insured's change of residence, death, or total disablement by accident, to be given to same agent who writes the policy, settles the terms of insurance, investigates losses, and recommends payment or non-payment, such agent must be deemed a general agent, without regard to extent of territory or scope of powers.

2. IDEM— *Waiver of conditions—Case at bar.*—Clause in policy denying insured's right to claim "a waiver by reason of any acts of any agent, unless such waiver is specially authorized in writing over the signature of the president or secretary of the company," does not extend to those stipulations that are to be performed after a loss occurred, such as giving notice, and furnishing proofs of death.

3. IDEM—*Refusal— Waiver of preliminaries.*—When general agent refuses to recognize any claim, such refusal waives compliance with the conditions as to preliminary notice and proof, and authorizes immediate suit.

4. PRACTICE AT COMMON LAW—*Evidence.*—As a general rule, it is inadmissible, even where the issue is whether a person did a particular thing, to put in evidence the fact that he did a similar thing at some other time.

5. IDEM—*Instructions—Case at bar.*—It is not error to refuse the instructions asked for by defendant below, to wit : 5. because it was misleading; 6. because it was not pertinent to any evidence in the cause ; and 7, 8 and 9. because mainly wrong in principle, and because that which was material in them was substantially covered by 10, given by the court of its own motion. The instructions asked for by plaintiff below correctly propound the law, and are pertinent to the facts.

6. APPELLATE COURT—*Harmless error.*—Where this court cannot see that a party objecting to the admission of evidence would be injured thereby, it will not reverse a judgment on account of such admission, though it may have been erroneous, and *vice versa.* *Johnson* v. *Jennings*, 10 Gratt. 1.

Error to judgment of hustings court of Roanoke city, rendered 13th December, 1884, in an action of *assumpsit*, wherein Jacob Harvey was plaintiff, and The Traveler's Insurance Company was defendant. The object of this action was to recover the sum of $1,500, the amount of a policy on the life of one Joseph Baker for the plaintiff's benefit. The verdict of the jury gave the plaintiff the sum demanded, and the court overruled the defendant's motion for a new trial, and entered judgment on the verdict; and the defendant obtained a writ of error and *supersedeas* to this court. The facts are set forth in the opinion of the court.

At the trial the court, at the plaintiff's instance, gave the jury the instructions following, to wit:

No. 1. If the jury believe from the evidence that the plaintiff wrote to the insurance company the letter dated August 21st, 1884, giving notice of the death of Baker, and that after receipt of said letter, and in consequence thereof, the company sent its agent, O. M. Cummings, to enquire and ascertain all the facts in reference to said death, and that the said agent came to Roanoke, the place of said death, and investigated the facts as to the death and the cause thereof, and that after making such investigation the said agent, upon the sole ground of the intoxication at the time of the accident, told the plaintiff "That he had no case, and that in his opinion the company ought not to pay, and would not pay, the policy," and that such denial of liability was not because the formal proofs of the death had not been given, then it was not incumbent on the plaintiff to furnish any further proof of said death, and

the plaintiff had the right at any time thereafter to institute this suit.

No. 2. The court further instructs the jury that under the policy of insurance in this case no particular form of notice of the death of the insured was required ; and that if they believed from the evidence that the letter written on the 21st day of August, 1884, was intended by the plaintiff to give the required notice to the company, and that upon the receipt of said letter the company sent its agent to the city of Roanoke, the place of the death of the insured, for the purpose of investigation, the facts and circumstances connected with said death, and that such investigation was made immediately thereafter, then no further proof could be required in this case before the suit was brought.

No. 3. The court instructs the jury that a substantial compliance with the conditions of the policy of insurance as to the manner and mode of giving notice of the death of the insured to the company is all that can be required on the part of the plaintiff in giving such notice.

No. 4. If the jury believe from the evidence that O. M. Cummings, the agent of the company, who investigated the circumstances attending the death of the insured after making such investigation, resisted the payment of the policy upon the sole ground that the insured was intoxicated at the time of the accident, it was not incumbent upon the plaintiff to furnish any other proof of death or to await any specified length of time before he had the right to institute this suit.

No. 5. The court further instructs the jury that the clause in the policy immediately following figure 8 under the head of "conditions," should be construed to refer to those provisions and conditions of the policy which enter into and form a part of the contract of insurance, and are essential to make it a binding contract between the parties, and which are conditions

material to the risk and not those stipulations which are to be performed after a loss has occurred, such as giving notice and furnishing proof of death.

No. 6. If the jury believe from the evidence that O. M. Cummings was a general agent of the company for the purpose of effecting policies of insurance and adjusting losses, and if they further believe from the evidence that the said agent declined to pay the policy upon the sole ground that the insured was intoxicated at the time of the accident, or that he so acted as to warrant the plaintiff in believing that the payment by the company would be resisted upon that ground, then the plaintiff had the right to institute this suit although ninety days had not expired from the death of the insured.

To the giving of these instructions the defendant excepted. Thereupon the court refused to give the instructions 5, 6, 7, 8 and 9, offered by the defendant, which are as follows, to wit:

5. That if they believe from the evidence that said Baker had gotten up in his sleep and while asleep had fallen out of the window, then they must find for the defendant.

6. That if they believe from the evidence that said Baker had been guilty of negligence or had failed to use all due diligence for his personal safety, then they must find for the defendant.

No. 7. The court instructs the jury that if they believe from the evidence that the agent, Cummings, had no authority to pass upon the question as to the sufficiency of the proofs or the question of the liability of the company, no refusal on his part to pay the claim or any expression by said Cummings of his opinion as to the validity or invalidity of the claim will constitute a waiver on the part of said company as to notice of death or the proofs thereof, unless said Cummings did some act whereby said Harvey was led to believe he had such authority. That a denial by the agent, Cummings, is not a denial

on the part of the company, unless they believe from the evidence that said agent had authority to make such denial or did some act whereby said Harvey was led to believe and did believe that he had such authority.

No. 8. That no acts of the agent, Cummings, can bind or affect the defendant company, unless the jury believe from the evidence that said Cummings was acting within the scope of his authority or that some act was due, either by said agent or said company, whereby said Harvey was reasonably led to believe and did believe said Cummings had authority to do such act.

No. 9. The court instructs the jury that if they believe from the evidence that the plaintiff, Harvey, met the defendant's agent, Cummings, by invitation to discuss the question of the liability of the company and the question of the proofs of death, and was then told by said Cummings: "It is not for me but the company at Hartford to say whether the claim shall be paid or not," and at the same interview handed said Harvey or his agent blank proofs of death with the tender of his assistance as to how they should be filled out, then there is no waiver of such proofs of loss by the defendant company though at said interview said Cummings declined to pay the claim or expressed it as his opinion that it was not a valid one.

But the court in lieu of said instructions gave the following, to wit:

"No. 10. The court instructs the jury that if they believe from the evidence that O. M. Cummings, the agent of the defendant, had no authority to refuse the payment of the policy to the plaintiff, and that the plaintiff was informed that he had no such authority and that the said Cummings did no act or made no statement which induced the plaintiff to believe that he had such authority, then no expression of opinion on the part of said Cummings that he did not think the company would

pay said policy would be binding on the company or amount to a refusal on its part to pay said policy.

"The court further instructs the jury that a local agent of a company authorized to receive and accept proposals for risks, subject to the company's ratification to issue and deliver policies and receive premiums therefor and supplied with blanks to be filled by him is a general agent of the company, and the company is bound by his acts and declarations as such agent made within the scope of his employment."

And to the refusal to give the instructions asked for by it and to the giving of the last instruction the defendant company again excepted, and filed its bill of exceptions to the opinion of the court, and filed also several other bills of exceptions to other rulings, which are commented on in the opinion. This writ of error was argued at Wytheville and decided at Staunton.

*Phlegar & Johnson* and *Scott & Berkeley*, for plaintiff in error.

*Penn & Cocke*, for defendant in error.

HINTON, J., delivered the opinion of the court.

The record in this case shows that on the 18th day of June, 1884, a policy was issued by The Traveler's Insurance Company, insuring one Joseph Baker in the sum of $1,500 against injuries resulting from accidental causes, in favor of his uncle, one Jacob Harvey, erroneously called in the policy of insurance, Joseph Harvey.

On the night of the 19th day of August, 1884, Joseph Baker, the person who was insured, fell from a window of his boarding-house, receiving injuries from which he in a few days died. Thereupon the assured, the defendant in error here,

having first demanded payment of the policy and being refused, instituted an action of *assumpsit* in the hustings court of Roanoke city, and recovered a judgment for the full amount of the policy; and to that judgment the present writ of error was awarded.

There are various errors assigned in the petition of the plaintiff in error, the most prominent of which I shall notice. The main grounds of defence relied on at the trial, however, were two: First, that there had been no such notice and proof of death as is required by the company ; and second, that the insured was drunk at the time of the accident; and it is to these defences that I shall more particularly address myself. As preliminary, however, to a consideration of these points, it may, perhaps, be well for me at once to declare what plainly appears to be the scope and power of O. M. Cummings, the agent, who has been the acting representative of this company throughout the whole of this controversy. And, perhaps, it may also be as well stated in this connection, as in any other, that we agree with the court below in the construction which it placed upon the latter half of the 8th clause of the policy, in instruction No. 5, which it gave at the instance of the plaintiff. That instruction asserts the proposition that the denial of the right of the assured to claim a waiver "by reason of any act or acts of any agent, unless such waiver be specially authorized in writing over the signature of the president or secretary of the company, is confined to those provisions and conditions of the policy which enter into and form a part of the contract of insurance and are essential to make it a binding contract, and does not extend to those stipulations which are to be performed after a loss has occurred, such as giving notice and furnishing proofs of death." Such is the rule as stated by a late author of high repute. May on Ins., sec. 511, p. 777. And in this case, such a construction is

required as well by the context as by the rule that the words of an instrument shall be taken most strongly against the party employing them.

We also agree with the court below in thinking that O. M. Cummings was a general agent. By the notice appended to the policy, all policy-holders are required to give notice to O. M. Cummings, agent, No. 8 North Charles street, Baltimore, Md., of any change of occupation on the part of the insured; and in the event of death or totally disabling injury by accident, of the person insured, notice of the fact, giving full particulars as to how, when, and where the accident happened, and its result, is to be given to the same agent, *who is required to write the policy.* From the admissions, acts and dealings of the said Cummings, in this case, it also appears that this agent has the power to agree upon and settle the terms of insurance, investigate losses, and that if he has not the absolute power to pay losses, at least that he has the power to recommend the payment of them, and that this recommendation, according to his own statement, was sure to be adopted and acted upon. Now, such an agent, whether we have regard to the extent of his territory, or the scope of his powers, must be regarded as a general agent. May on Ins., secs. 126 and 151. Such an agent has the power to waive the conditions of a policy as to the preliminary proof of loss. Id.

The question next arises, whether there was such a waiver of the preliminary proof of death, in this case, as justified the assured in bringing suit, although the ninety days, within which, after proof of loss, the payment was demandable, had not expired. We think there was. The deposition of the witness (Friend) shows not only that Cummings "objected to the payment of the policy on the ground that Baker, the insured, was under the influence of drink at the time of the accident," but it also shows that his refusal to recommend the

payment of the loss was tantamount to a refusal on the part of the company to pay the same.    Friend, one of the witnesses, says: "I asked him, 'Do you intend to pay this policy or not?' He replied, 'It is not for me to say; the company at Hartford must answer that question.'    I said, 'You being the authorized agent of the company in this section, does not the company depend on you as to whether this claim shall be paid or not; if you advise them to pay a claim, do they not pay it; if you advise them not to pay it, do they not refuse?'    He hesitated a little, and said, 'That is about the way of it.'    I said, 'Will you advise them to pay this claim?'    He said, 'It was his opinion the claim ought not to be paid.'    I then said, 'The plain English of the matter is, you will advise your company not to pay, and therefore they will not pay."

The deposition of Dr. Sims shows that he, Cummings, then went to him, Sims, told him what information he had gotten about Baker's having been under the influence of liquor, and *then requested the Doctor to give him, and took from the Doctor the blank form which Harvey had given to him as the attending physician to fill up* with the particulars of death, as required by the company.    And Cummings in his own deposition, upon cross-examination, says: "After conversing with Harvey, *I told him he had no case.*    I considered that he had surrendered the claim.    I then went to Dr. Sims and took up the blank which I had sent to H," meaning Harvey, the assured, "for proof of death.    *I had no reason for taking up the blank, but that Harvey had no case, and it was no use.*    I only resisted the payment on the ground that Baker was drunk at the time of the accident; on *that point that he was not drunk was all the proof I wanted.*    I do not claim there was any other ground.    I do not claim there was any false swearing in the application; that there was any disease or any other forfeiture besides the reported intoxication at the time of the accident.    I was satisfied about the matter before I took the blank from Dr. S."

Now, if all this does not amount to a waiver of the preliminary proof of death, what can ?    There is a general agent, who comes all the way from Baltimore on this business, and who, according to his own admissions, "went to the house where the accident happened; conversed with the family; saw Dr. Sims; examined him; saw other parties and examined into all the circumstances of the case for the company"; then tells Harvey that he has no case; and then, to crown it all, actually withdraws the blank proof of death from the hands of the attending physician, who, at the request of the assured, was about to fill it up, and that too only for the reason, as he, himself says, that he had decided that Harvey had no case, and that it could be of no use to him to have the blank proof filled up. Now, here are the facts, and if they do not amount to a waiver under the authorities, I repeat, I am at a loss to know what can. Here, in dispute of his assertion to the contrary, he not only, on behalf of the company, resists the payment on the ground that Baker was drunk at the time of the accident, but he takes away the blank proofs because the filling of them up would be but an idle and useless ceremony.    These acts and dictations clearly establish a waiver.    In Flanders on Fire Ins., p. 542, that writer says: "The refusal to recognize the evidence of any claim, or a general refusal to pay, renders the delivery of notice and proofs a useless ceremony, and is treated as waiving a strict compliance with the condition as to the preliminary notice and proof, both in respect to form and time." And in May on Insurance, sec. 469, that writer says: "A distinct denial of liability, and refusal to pay, on the ground that there is no contract, or there is no liability, is a waiving of the condition requiring proof of loss.    It is equivalent to a declaration that they will not pay, though the proof be furnished; and to require the presentation of proof in such a case, when it can be of no importance to either party, and the conduct of

the party in favor of whom the stipulation is made has rendered it practically superfluous, is but an idle formality, the observance of which the law will not require.   *   *   *   And a waiver of the proof is a waiver of the condition that payment is not to be made until a limited time after the proof, so that in such case suit may be brought at once upon the denial of liability, although the time within which, after proofs of loss, the payment would be demandable may not have expired." At section 505, the same author says: "And if the agent of the company, after an examination of the circumstances attending the loss, informs the insured *that he cannot recommend* the company to pay the loss, because it appears by his statement that he had sold more goods than he had purchased; this is a denial of all liability on the part of the company, and a waiver of its right to demand the usual proof." The language of Cummings is more positive and unequivocal than that used in the last-mentioned case, and clearly amounts to a waiver.

This brings us to inquire whether there is any proof which would justify a verdict that Baker, the insured, came to his death while under the influence of intoxicating drinks.   Upon this point the testimony is as follows: Rose Hoover testified that her father keeps a boarding-house in Roanoke City, and that Baker, the deceased, boarded with them; that he came home on the night of the 19th August, 1884, about 11 o'clock; that she was standing in the hall and saw him go up stairs, but saw nothing unusual about his appearance.   She also testified that she found him *very early* the next morning lying under this window upon the ground in an insensible condition, but "saw no signs of vomit about his person when I found him."   Dr. Sims, another witness, testified: "When I first saw Baker I thought he was under the influence of liquor; I afterwards came to a *different conclusion.*"   And he adds:

"Upon my first examination of Baker, *the impression that he was under the influence of liquor was quickly dissipated;* all the appearances which I attributed to liquor would naturally be produced by the accident; the vomit, meaning the vomit which he found on his person on the morning of the 20th of August, when he visited him, and which, according to the testimony of Rose Hóover, was not upon his person when she discovered him lying under his window, might have been caused by the fall, and so might the appearance of the eye and the distorted face have been caused by the fall."

Edward McCarty, another witness and the son of the John McCarty, hereafter to be mentioned, testified that he saw him about 11 o'clock on the night of the accident, when he came into his father's bar-room and took a drink of beer, and that he was not drunk. Now, against the testimony which shows that the deceased had only taken three glasses of beer during the evening and night, and that he was not, to any appreciable extent, under the influence of intoxicating drink, and the testimony of other witnesses that he never drank whiskey, we have the mere opinion of John McCarty, who says that when he saw the deceased about 11 o'clock he "thought he had been drinking right smart." Looking, then, to the testimony upon this point, and seeing that the question whether he was under the influence of intoxicating drink was submitted to the jury under proper instructions, we feel obliged to say that even if the question was on which side does the testimony preponderate, we should have to answer that it was against the theory that he was under the influence of drink at the time of the accident. But this case has been submitted to us upon a certificate of evidence, and not of facts proved, and under the well-established rule, this court can take no cognizance of the case unless after rejecting all the parol evidence in favor of the exceptor, and giving full force to that of the other party, the

decision of the lower court still appears to be wrong.    2 Min. Inst. 827, and cases cited.

We have thus gone over this case as it was originally intended to be tried; for it must be borne in mind that the only objection urged by Cummings, as he himself tells us, was, "that Baker was drunk at the time of the accident," and we can find no objection to the verdict, or to the way in which the case was presented.

But, it is said, that if the verdict be not against the law and the evidence, it ought to be set aside on account of the after-discovered evidence.    We do not think so.    We have examined the affidavits of Lewis F. Snyder and Logan C. Snyder, and apart from the fact that no sufficient excuse has been shown for the failure to produce them on the trial, we are far from being satisfied that the evidence of either, or both of them, ought to procure a different verdict upon another trial.

It only remains for us to consider some objections which have been urged to the refusal of the court. to admit certain evidence and to give certain instructions, which were asked by the plaintiff in error; for, as to the instructions which were given at the instance of the plaintiff, and which relate mainly to the waiver of notice and of the preliminary proof, we have carefully examined them, and find that taken as a whole they present the views which have been heretofore expressed in this opinion.

It is urged, however, that the court erred in its refusal to permit the letters of the plaintiff and his agent to Cummings to be read to the jury.    But after a careful examination of those letters, we are unable to assent to this suggestion.    The statements in these letters as to the alleged intoxication of Baker, are rather against than in favor of the defendant, and in such a case as the court can see from the evidence itself that

it is against the party excepting, it cannot be held to be error of which the exceptant can complain. *Johnson* v. *Jennings*, 10 Gratt. 1,

The next objection urged on behalf of the plaintiff in error is the refusal of the court to permit evidence to show that previously, and when under the influence of liquor, the deceased had attempted to jump from the window, under which he was found the day of his death. But we can perceive no error in this ruling of the court. As a general rule, it is admissible even where the issue is whether a person did a particular thing, to put in evidence the fact that he did a similar thing at some other time. 1 Wharton's Law of Ev., sec. 529. In this case, however, there is no pretence that the deceased committed self-destruction, and it could not, therefore, be competent testimony to repel the theory of accident, or to establish that his habits were intemperate at the time of the taking out of the policy.

The next assignment of error is that the court refused to give instructions Nos. 5, 6, 7, 8, and 9, as asked by the defendant, and gave, of its own motion, instruction No. 10.

But here again we fail to find error. The fifth instruction does not, as has been supposed in the petition of the plaintiff in error, declare that, if the injury happened in consequence of somnambulism, the defendant was not liable. It says if they believe from the evidence that said Baker had gotten up in his sleep, and while asleep had fallen out of the window, then they must find for the defendant. Such an instruction excludes the idea that the deceased could possibly have gotten up in his sleep, have then awakened, and again fallen to sleep. It was therefore calculated to mislead by making the jury think that because the deceased might have gotten up in his sleep and subsequently and after having awakened, fallen out of the window whilst asleep, that somnambulism was the proximate cause of the accident.

Instruction number six was not pertinent to any evidence in the cause, and was properly excluded.

As to instructions numbers seven, eight and nine, they are all in conflict with the instructions given for the plaintiff and with the views hereinbefore expressed in this opinion; besides, if there was any error in the refusal of the court to give them, it was to all intents and purposes cured by instruction number ten, which the court gave, and which substantially covered all that was material in these instructions, so far at least as the defendant was concerned.

Upon the whole, we are of opinion that there is no error in this case to the prejudice of the defendant, and the judgment of the hustings court of Roanoke city must be affirmed.

JUDGMENT AFFIRMED.