# CHARLESTON.

JACK GATES, *etc. v.* LEE JUSTICE

(No. 6440)

Submitted April 30, 1929.    Decided May 7, 1929.

332

*Mark T. Valentine,* for plaintiff in error.

HATCHER, JUDGE:

The plaintiff obtained through the defendant two fire insurance policies which were written by foreign companies not admitted to transact business in this state. The plaintiff was unable to collect from the companies for a loss under the policies. In this action he seeks to hold defendant personally liable by virtue of section 53, Chapter 34, Code. The defense is that the defendant acted as agent for the plaintiff, and not for the insurance companies. The jury found for the defendant, and the trial court sustained the verdict.

The defendant conducted a general insurance business under the name of "Lee Justice Insurance Agency." The plaintiff testified that the defendant solicited this insurance; that after the policies were delivered, a bill was sent him for the premiums in the name of defendant's agency for $102.85, which amount he paid directly to the agency; and that when the loss occurred the defendant said he "would call up his man at Charleston that represented him and his company," and have the loss adjusted. The defendant was not a licensed fire insurance agent at that time, although he had formerly been one. He testified that he did not solicit fire insurance business; but merely wrote fire insurance when requested to do so, as "an accommodation", and that he did not solicit plaintiff, but wrote the policies at plaintiff's request. He stated that he had procured a number of policies for other parties in the two companies, the premiums of which amounted to about $8,000.00. He explained his connection with the companies by saying that their general agent in Philadelphia had written him that they "could place some outside business." He detailed his system as follows: "When fellows would come for insurance, I would take the application and

mail it to the companies and get policies for them.'' He would then collect the regular premiums and deduct therefrom his commission. He admitted he did not tell plaintiff or any one else that he was acting as his agent instead of agent for the companies; that although he knew several months before the fire that the companies were not.licensed in this state, he did not inform plaintiff; that he had authority from the general agent of the two companies to adjust small losses and to sign its name ''in case of a light transfer'', upon printed forms furnished for that purpose, which he had done; and that if he had not thought the companies all right, he ''would not have been working for them.'' He also admitted he had written a letter to the general agent of the two companies after the fire, in which he stated that the plaintiff was ''talking all over town'' about his failure to collect the policies, and that ''he has caused me to lose several good prospects.'' His explanation of that statement is: ''So many people came in with policies even in casualty companies —and fire companies too—for cancellation, and I would have to pay back their money on them up to the amount of several hundred dollars, and that is what hurt me.'' He further stated that since learning that the companies were not licensed in this state, he had not ''written any business for them at all.''

The statute above referred to is: ''The agent of any insurance company of any other state or foreign government, which has not been admitted to transact business in this state, shall be personally liable upon all contracts made by or through him, directly or indirectly, for or in behalf of any such company.''

An insurance agent is ordinarily defined as one appointed by an insurance company ''to perform some act or acts in furtherance of the business of his principal. * * Whether upon a given state of facts one is or is not to be deemed the agent of the insurer has generally been held to be a question of law.'' 16 A. & E. Ency. Law, p. 907, 32 C. J., p. 1052. Here the uncontradicted evidence shows that the general agent of the two companies had written defendant in regard to placing ''outside business'' for them; that he received and

transmitted applications to them, delivered their policies to and collected premiums from the insured, adjusted small losses, signed transfers, and refunded premiums for them; that he not only had effected a large amount of insurance for them prior to plaintiff's loss but had "good prospects" for further insurance contracts, and that he regarded himself as "working" for them. His authority to perform these acts for them was express and is not even left to implication. That he was their agent is so apparent as to need no further comment. *Simmons* v. *Vaughn and Blackwell*, 165 Ky. 167, 177; *Price* v. *Garvin*, (Tex.) 69 S. W. 985; 2 C. J., p. 419, sec. 1; 21 R. C. L., p. 817. As their agent it is a well settled principle of law that he "cannot be considered in any sense as the agent of insured in any matter connected with the issuance of the policy." 16 A. & E. Ency. Law 909. 32 C. J., p. 1053, sec. 128; *Dietz* v. *Ins. Co.*, 31 W. Va. 851, 856. That the defendant did not solicit the insurance in the first instance is of no evidential consequence. In a case under a statute similar to ours, the Supreme Court of Iowa pertinently said:

"Now, while Giberon did not solicit the insurance in the sense of having importuned defendants to apply for it, he did procure the application within the meaning of the statute; for he received it, and at his request the policy was issued upon it. To hold otherwise would be to put an exceedingly narrow construction upon the words of the enactment, and one which in many cases would defeat the manifest legislative intent. The manner in which such business is transacted is known to all men. Prudent business-men and property-owners do not wait to be personally solicited before procuring insurance on their property, but their custom is to apply to the agent of some company or association engaged in the business of insurance; and, if the agent is a mere solicitor, their application is forwarded to some agent or officer having authority to accept or reject it. The statute was as certainly intended to apply to transactions of that kind as to those in which the agent procured the application by personal solicitation." *St. Paul, etc. Ins. Co.* v. *Shaver*, 76 Iowa 282, 286.

Under the statute the defendant is personally liable upon the insurance contracts in this case. See generally 32 C. J., p. 1001, sec. 38; Cooley's Briefs on Ins. (2nd Ed.), pp. 491 to 495. The verdict of the jury was therefore contrary to law, and will be set aside, and the judgment of the lower court sustaining it will be reversed.

*Reversed; verdict set aside.*