## Richmond

### NATIONAL LIBERTY INSURANCE COMPANY OF AMERICA, A CORPORATION v. W. A. JONES AND J. J. JONES, PARTNERS, ETC.

January 16, 1936.

Present, Campbell, C. J., and Holt, Hudgins, Gregory and Eggleston, JJ.

The opinion states the case.

*Alexander H. Sands* and *Alexander H. Sands, Jr.,* for the plaintiff in error.

*John C. Parker, Jr.,* for the defendants in error.

HOLT, J., delivered the opinion of the court.

Under review is a judgment which rests upon a contract for fire insurance charged to have been broken.

W. A. and J. J. Jones of Southampton county are partners trading as South Quay Peanut Company. That company bought and sold peanuts and from time to time placed such insurance upon its stock as prudence prompted. Owing to recent purchases, J. J. Jones, late one evening in the latter part of May, 1933, through his telephone called up G. E. Pillow, and told him that he wanted some additional insurance. Pillow worked for and with W. O. Bristow and had been with him since 1919. Bristow was agent for a number of insurance companies, among which was National Liberty Insurance Company of America, plaintiff in error here. He was and is an ordinary fire insurance agent and is clothed with all such powers as usually attach. Particularly he was authorized to make contracts of insurance and to issue policies on satisfactory risks. In the division of work these duties and responsibilities usually fell upon Pillow. He was Bristow's trusted employee, made contracts for insurance, and countersigned and issued all necessary policies.

The contract in judgment was made at this time. Its terms were definite, the property to be insured was certain, the time for which it ran was fixed, the name of the assuring company was stated, and its charges for risks assumed. In other words, all of those conditions which are ordinarily necessary to support valid contracts of in-

surance were present. This is Pillow's account of that transaction:

"Q. Tell me about your conversation with Mr. J. J. Jones of South Quay Peanut Company in which you talked about insurance on peanuts in that building.

"A. Mr. J. J. Jones called me up at my home after supper some time during the latter part of the month of May, 1933, and asked me for coverage up to $1,500 on peanuts in his factory near South Quay, Virginia.

"Q. What did you say?

"A. I told him I would bind the coverage right at that minute in the National Liberty Insurance Company and that I would issue the policy as soon as I got back to the office the next morning and place the policy in my vault with his other papers and I quoted him the rate of $39.50 per thousand for one year at $1,500 which I think would amount to fifty-nine dollars and some cents for $1,500 insurance.

"Q. Was that arrangement agreed to by Mr. Jones?

"A. Yes."

Pillow did not issue the policy the next morning. He never issued it. The simple fact is that he forgot all about it until July 17th following, when the property insured was destroyed by fire.

It is also true that the premium due was not paid. This insurance agency, and these men insured, had done business for a number of years. They kept a running account which was balanced and settled from time to time. The agency held itself liable for premiums which it failed, when contracts of insurance were executed, to collect in cash. This particular premium was, after the fire, tendered to the company and refused. It was not necessary that actual payment be made at the time of the contract. *Commercial Mutual Marine Insurance Co.* v. *Union Mutual Insurance Co.*, 19 How. 318, 15 L. Ed. 636.

Previous to this time and because of certain risks which the company was unwilling to accept, Bristow had indicated his purpose to surrender his agency. Certainly

he entertained such purpose but we do not think from the evidence that this purpose was consummated. He was still its agent and was acting for his company and not for the assured. Moreover, he was within territorial limits, and so far as powers here assumed are concerned, a general agent. *Massachusetts Bonding & Insurance Co.* v. *Piedmont Service Station,* ante, page 167, 181 S. E. 397; *Royal Indemnity Co.* v. *Hook,* 155 Va. 956, 157 S. E. 414; *Northern Neck Mutual Fire Association* v. *Turlington,* 136 Va. 44, 116 S. E. 363; *Travelers' Insurance Company* v. *Harvey,* 82 Va. 949, 5 S. E. 553; *Georgia Home Insurance Company* v. *Kinnier's Adm'x,* 69 Va. (28 Gratt.) 88; *Gates* v. *Justice,* 107 W. Va. 331, 148 S. E. 197.

Plaintiffs first sought relief in equity. The chancellor was of opinion that there was no contract of insurance in force, and so decreed, doubtless basing his conclusion upon *Eastern Shore of Virginia Fire Insurance Co.* v. *Kellam,* 159 Va. 93, 165 S. E. 637, 642, where it is said:

"Under this statute (section 1, subd. 6, chapter 256, Acts 1928) any valid oral contract of insurance which Mears could have made with the defendants was limited to a term not exceeding thirty days; and under any view which can be taken of this case had expired long before the fire."

The trial court was also of opinion, "That the said bill and amended bill allege a case under which the plaintiffs are entitled to a right of action against the defendant for damages for the breach of its contract to issue a policy of insurance, the court doth hereby order that this case be transferred to the common law side of this court, and that the plaintiffs have leave so to change or amend their pleadings," etc.

It was transferred to the law docket and was by consent heard by the judge without a jury.

Plaintiffs still contend that they are entitled to recover on their oral contract, and that they are also entitled to recover by way of damages for a contract broken, in that no written policy was ever issued.

The first contention is precluded by the *Kellam Case.* While temporary oral contracts are still valid, they are valid only until the written contract can be executed and in no event beyond a thirty-day period. Moreover, the oral contract here in terms was not intended to extend beyond the day following. Subject to this limitation, it was a valid contract. This company through its agent undertook to do two things. It undertook by word of mouth to cover risk until the next day, and it undertook on the next day to execute and issue an ordinary policy. Plainly, these were lawful undertakings. Certainly no one could contend that it was beyond the power of an agent to agree to issue a policy on a certain day, and that power is not diminished by the fact that there was an agreement also for temporary coverage, particularly when this temporary arrangement was in itself legal and in accord with common usage.

The plaintiffs' right to recover rests not in the policy but grows out ;of damages for breach of contract to deliver.

A leading case on this subject is *Sanford* v. *Orient Insurance Co.* (1899), 174 Mass. 416, 54 N. E. 883, 884, 75 Am. St. Rep. 358.

There an agent made an agreement by which his company was to renew a policy of insurance soon to expire, and promised within a reasonable time to issue a new one. That was not done. The court said that it was a little difficult to say whether the plaintiff claimed that his property was insured, or that he had been damaged by reason of a failure to insure. "The presiding justice, however, at the trial seems to have understood that the claim of the plaintiff as expressed in these two counts was that 'there was an oral agreement to make such an instrument, —to make a policy of insurance,—and that agreement was not carried out'; and, on the whole, we think the counts, as amended, will bear that interpretation. The action, then, is not based upon the theory that at the time of the fire the property was insured, but that the agree-

ment to insure it had 'not been carried out'; or, in other words, it is for the breach of the contract to insure. * * * The defendant, not having issued the written policy within a reasonable time, has committed a breach, and is liable in damages. As the action is not upon the policy, but upon the breach of the contract to deliver it, the provisions which were to be inserted in the policy as to the mortgagee and as to arbitration are not applicable. No question arises as to the rule of damages."

In Vance on Insurance (1st Ed.) page 155, the rule is thus stated:

"Instead of making a contract of present insurance, the parties may make an agreement by which the insurer binds himself, subject to specified conditions, to issue a policy of insurance to the insured. A certain time for its issue may be designated, but, if there is no such time agreed upon, the policy is to be delivered within a reasonable time. Under such an executory contract the right acquired by the insured is merely to demand the delivery of a policy in accordance with the terms agreed upon, and the obligation assumed by the insurer is to deliver such policy. The policy to be delivered is, of course, that in the contemplation of the parties at the time of making the preliminary contract—that is, the usual policy issued by that insurer, or the standard policy in case such a form has been prescribed by law. A failure on the part of the insurer to deliver the policy in accordance with the agreement at the time stipulated, or within a reasonable time, will render him liable in an action for breach of contract, or to a suit in equity for specific performance."

See also, *Campbell* v. *American Fire Insurance Co.,* 73 Wis. 100, 40 N. W. 661; *Fidelity-Phenix Fire Ins. Co.* v. *School Dist. No. 10,* 80 Okl. 290, 196 Pac. 700; 32 C. J. 1098.

Indeed no citation of authorities is necessary to support the proposition that damages may be based upon a broken promise to insure. In this case, as we have seen, there was a lawful, oral promise to insure for a day, and another promise that upon the termination of this tem-

porary coverage a written policy should issue. This oral promise is, under the authority of the *Kellam Case,* valid. That was an action on oral insurance, brought too late. This is one on a broken promise to insure. There is no conflict here.

Ordinarily it would have become the duty of the insured to ascertain why his policy had not been delivered according to the contract. For that failure we have this adequate excuse. Attached to Bristow's office was a fireproof vault and it was his custom either at the request or with the assent of his clients, to keep their policies that they might have the protection which this vault afforded, a custom followed in probably five hundred instances. This the plaintiffs knew, it was satisfactory to them, and their policies had long been left for safekeeping there, and they were not troubled by the fact that there was no actual delivery. Nor are we troubled by the manner in which they were dealt with, or by the places within which they were kept, and that for this reason, the policy never was issued.

The argument in this case has touched upon matters which we do not deem necessary to its decision. What we hold is that an agent may make a lawful contract for a written policy of insurance to be delivered and to take effect at some future day, that his company is liable in damages if this contract be broken, and that this liability is not defeated because there was also a lawful oral contract for temporary coverage.

The judgment of the trial court should be affirmed, and it is so ordered.

*Affirmed.*