# Richmond

UNIVERSAL INSURANCE COMPANY v. FLORA MOUEL.

January 16, 1936.

Present, Campbell, C. J., and Hudgins, Browning, Chinn and
Eggleston, JJ.

The opinion states the case.

*Morton & Parker* and *Donald T. Stant,* for the appellant.

*D. F. Kennedy* and *A. A. Skeen,* for the appellee.

BROWNING, J., delivered the opinion of the court.

Flora Mouel was the owner of two lots in the town of Appalachia, known as Lots Numbers 6 and 7 in an addition to the said town. Her husband, H. W. Mouel, owned Lot Number 8 in said town, adjoining the two lots owned by his wife. There was a two-story dwelling house, in construction, partially concrete and partially frame, containing eight rooms. There were also some small outhouses on the Flora Mouel lots, and two small outhouses on the lot owned by her husband.

During the construction of the residence it became

necessary for the owner to secure money for the purpose of purchasing a considerable quantity of building materials. Application was made to the Home Builders Supply Company for the materials to accomplish this purpose. The Home Builders Supply Company agreed to supply the needed materials, upon the execution by the Mouels of a deed of trust on the residence of Flora Mouel, and the further security of fire insurance on the residence for its benefit.

Preliminary to the effectuation of this transaction, one J. C. Gibson, a partner in the Home Builders Supply Company, which was a co-partnership, consisting of R. C. Wolfenbarger and himself, told Mrs. Mouel that his firm desired to have insurance written on the house, and that he would send the man up for that purpose. Pursuant thereto, J. Charles Jones, who was manager of the Addington Insurance Agency, and Wolfenbarger went to the Mouel home on the 31st day of May, 1924, when and where the deed of trust was executed and acknowledged. Mrs. Mouel testified that at that conference the insurance policy was written, and that Mr. J. Charles Jones represented the Addington Insurance Agency. It appears, however, that the insurance policy bore the date as of June 2, 1924. It does not appear in whose name, as the assured, the policy was written.

From that time to the date of the fire, covering a period of some seven years, the insurance on the Flora Mouel residence was kept in force by successive renewals, by policies issued by various fire insurance companies represented by the Addington Insurance Agency, the choosing of the companies carrying the risk being according to the volition of the agency. There was a break, or hiatus, in the continuity of the insurance period of a few months, when the building was uninsured because there was a change in the deed of trust indebtedness on the property, in that the first deed of trust was succeeded by a second and third deed of trust lien, in which shifting the first deed of trust was discharged. Its substitu-

tion, with accompanying insurance provisions, closed the hiatus, and the transaction continued on as before. There was some jockeying on the part of a new insurance agency, with which J. Charles Jones had become connected, to write the Mouel line of insurance. Indeed, this new agency did write a policy covering the residence building, which was, within a few months of its issuance, cancelled on account of the non-payment of the premium, the holder of the indebtedness secured by the deed or deeds of trust preferring to have the Addington Insurance Agency and its companies carry the risk. On November 9, 1930, the insurance policy which is the subject of this suit, was issued by the Universal Insurance Company, through its agent, the Addington Insurance Agency. This was a renewal, through successive steps, of the original insurance of 1924.

On June 13, 1931, during the night-time, the residence on the lots owned by Flora Mouel was destroyed by fire, as well as a number of outbuildings, including those on Lot Number 8, belonging to H. W. Mouel. The policy referred to, of November 9, 1930, was in force and effect when the fire occurred. It was written, however, in the name of H. W. Mouel instead of the name of Flora Mouel. On the early morning of the fire, an agent of the insurance company, who was an employee of the Addington Insurance Agency, came to the scene of the fire. Shortly thereafter, H. W. Mouel filed proofs of loss with the Insurance Agency, in his own name, in which he swore in effect that he was the sole and unconditional owner of the residence.

The Universal Insurance Company paid the mortgagee, or holder of the mortgage deed of trust indebtedness, the amount due on that account, but denied further liability, alleging that H. W. Mouel was not the owner of the property insured, and that he had sworn falsely with relation thereto. H. W. Mouel then instituted an action at law on the $2,000 policy, alleging that this action was for the benefit of Flora Mouel. The action also covered

the policy issued on the two small outbuildings on his lot, number 8, which, of course, was for his own benefit. Subsequently Flora Mouel filed her bill to reform the $2,000 policy, to accord with the true ownership of the property, alleging that she had furnished the representative of the Home Builders Supply Company, and the representative of the Addington Insurance Agency, all the information which she possessed as to the state of her title to the land on which the residence, which was burned, was located, which information included her deed, and that she was unaware of the fact that the policy of insurance had been written in the name of her husband rather than in her own name, and that she was not responsible for the misdescription or mistake, and that she could not successfully controvert the contention of the forfeiture of her insurance in a court of law, and that she had been mistaken as to the proper forum in which her action should have been brought.

The effect of the allegations of the bill was that a mutual mistake of fact had been made in the policy of insurance as to the ownership of the property insured.

The trial court transferred the action at law to the Chancery side of the court, and upon the depositions of witnesses, and sundry exhibits, the court granted the relief prayed for by Flora Mouel, and decreed that she recover of the Universal Insurance Company the sum of $2,000, with interest, subject to a credit of the amount which the company had paid on account of the Standard Mortgage Clause attached to said policy. With respect to the claim of H. W. Mouel for the sum of $200 on account of loss on property, which belonged to him, by the said fire, the issue arising thereunder was transferred back to the law side of the court for trial by jury, if the defendant, the Universal Insurance Company, should be so advised.

The crux of the defendant's contention is, that the sole and unconditional ownership clause of its policy was violated by the plaintiffs, and therefore it is not liable under

the terms of the policies; that no case for reformation was made out by the evidence, and it was error for the court to reform the policy; that it was also error for the court to transfer back to its law side the question of its liability to H. W. Mouel; that no proof of loss was ever furnished by complainant, Flora Mouel; and that if those furnished by H. W. Mouel were held sufficient, the complainant was barred from relief because of false swearing by H. W. Mouel.

From a careful reading and consideration of all the evidence, we are of the opinion that the trial court was right in all of its rulings that are complained of.

The defendant company urges that the visit of J. Charles Jones, the manager and representative of the Addington Insurance Agency, to the Mouel home on the 31st day of May, 1924, was in the capacity of a notary public, to take the acknowledgments to the deed of trust; that his presence there was not in an insurance interest or sense. We are not in accord with this interpretation of the effect of the evidence. We think that the evidence of Mrs. Mouel, which was clearer and more definite than that of any other witness, as to what transpired on that occasion, tends to show that Wolfenbarger and Jones were there for the purpose of effecting a transaction which was of mutual benefit and interest to them. The one was to profit by the sale of the building materials handled by his firm, and the security of the deferred purchase money by good and valid insurance on the building or buildings into which the materials entered and became a part; the other was to profit by an increase in the number of the customers of the Insurance Agency of which he was the manager, and the augmentation of the premiums earned by his agency and the increased business flowing to his principal, the issuing insurance company. We think that the fact of J. Charles Jones being a notary public and taking the acknowledgments to the deed of trust was a mere incident, and a

rather trivial one, compared to the larger things of value connected with the transaction.

Mr. and Mrs. Mouel were unlettered people. They know nothing about the intricacies of insurance policies, or the requirements of their provisions, or the legal effect of them. They wanted to complete their residence. They needed the materials. They did not have the money to pay for them, and they contracted with the Home Builders Supply Company to furnish these things. The insurance of the buildings became a matter of importance to all of the parties concerned. Mrs. Mouel testified that Wolfenbarger and J. Charles Jones took her deeds back to the Home Builders Supply Company's office. The deed, of course, affected the insurance agency, and in turn the insurance company, with notice of the true ownership of the property. The form of the deed of trust tended to show that the writer thereof knew the state of the title to the property conveyed, because Flora Mouel's name was first, as a grantor, followed by her husband's name, as "her husband," which was perfectly proper and legal and was the regular way in which their names should appear, in view of the ownership of the property. It is not charged that the Mouels were guilty of any fraud or even equivocation in the matter, except that H. W. Mouel is charged with false swearing in connection with the proofs of loss, and it is veiledly suggested somewhere in the record, that they might have been implicated in the origin of the fire. The evidence does not at all justify such an inference. It would seem that the proofs of loss were properly made out and filed by H. W. Mouel, as the policy was written in his name, and that the statement contained in the loss proofs as to the ownership of the property, under the circumstances, can hardly deserve the implication of turpitude which ordinarily attaches to false swearing.

The evidence, in its entirety, convinces us that there is presented a case of a clerical misprision; that neither Mrs. Mouel nor her husband knew that the policy of insurance on the residence was in the name of "H. W.

Mouel." They had never seen the policy in question. They would not have known of the legal effect of the manner in which it was written if they had seen it. As a matter of fact, the policy was in the possession of the mortgagee, or its transferee.

It does not appear that any questions relating to the title or to the ownership of the residence were ever asked of either of the Mouels, therefore, they could not have misled or deceived anyone as to the matter. What advantage could have accrued to them from having the property in the name of the husband rather than the wife, who was the owner? What object could they have had in obscuring the true ownership? How can the thing be satisfactorily and logically accounted for, except on the inescapable theory that it was a mistake all around?

■ The law applicable to the facts which we have adverted to is quite well settled in this State in the case of *North River Insurance Co.* v. *Lewis,* 137 Va. 322, 119 S. E. 43, 45. This court said, through Prentis, J., "There are many pertinent cases and they cannot be reconciled, but there seems to be little doubt that by the weight of authority, in the absence of deceit and fraud of the assured, where there is no application (and there was none here), or if the answers are written by the agent on his own knowledge or authority without questioning the applicant (as is the case here), the company is generally held estopped from relying upon a forfeiture, either because of the falsity of such answers as are written by its own agent, or because of the failure to answer questions material to the risk which have never been asked. 16 L. R. A. (N. S.) 1243, note.

"In applying this rule, this is said in *Washington Mills, etc., Mfg. Co.* v. *Weymouth Ins. Co.,* 135 Mass. [503] 505: 'The plaintiff made no misrepresentations and no concealment of his title. * * * The defendant saw fit to issue this policy without any specific inquiries of the plaintiff as to the title to the land, and without any representations by the plaintiff upon this point. It was its own careless-

ness, and it cannot avoid the policy without proving intentional misrepresentation or concealment on the part of the plaintiff. An innocent failure to communicate facts about which the plaintiff was not asked will not have this effect. *Commonwealth* v. *Hide & Leather Ins. Co.,* 112 Mass. 136 [17 Am. Rep. 72]; *Fowle* v. *Springfield Ins. Co.,* 122 Mass. 191 [23 Am. Rep. 308]; *Walsh* v. *Philadelphia Fire Association,* 127 Mass. 383."

This is also said in the case of *Royal Indemnity Co.* v. *Hook,* 155 Va. 956, 157 S. E. 414, 417, through Holt, J.: "The insurance agent, within the general scope of business he transacts, is *pro hac vice* the insurance company. What he knows, they know. What he does, they do. He has power to bind and to loose, and no limitation on his power unknown to strangers will bind them."

It was said in the case of *Deitz* v. *Prov. Wash. Insurance Co.,* 33 W. Va. 526, at page 545, 11 S. E. 50, 57, 25 Am. St. Rep. 908: "If the clerk (employee in insurance agency office) knew to whom the property belonged, and it was left to him to write out the policy, and he, while intending to write the name of the true owner, wrote that of her husband, by a clerical mistake, then, the plaintiff need prove nothing more in regard to ownership, to entitle him to recover."

In the case of *Croft* v. *Hanover Fire Insurance Co.,* 40 W. Va. 508, at page 520, 21 S. E. 854, 858, 52 Am. St. Rep. 902, it is said: "Courts must not let insurance companies evade their policies through mere technicalities. They must be treated fairly, and only held up to their fair engagements. They are very valuable institutions, deserving patronage and encouragement; but when their contracts of indemnity prove worthless, for unsubstantial reasons, to those who are in distress and poverty from the waste of fire, against which their prudence sought to provide, it derogates from the efficacy of the policies and the confidence of the public in fire insurance."

In the case of *Dupuy* v. *Delaware Insurance Co.* (C. C.) 63 Fed. 680, 681, it was said in the syllabus: "Where a

fire insurance agent has full knowledge of assured's interest in property at the time he issues a policy on it which misstates assured's interest, and he issues the policy on his own knowledge, without any statement or representation by the assured, the policy is not rendered void by a condition that it shall be void if such interests are not truly stated."

That equity has jurisdiction to reform written instruments in a case as we have seen this to be, is too well settled to need further comment. See *Dickenson County Bank* v. *Royal Exchange Assur.,* 157 Va. 94, 160 S. E. 13, 76 A. L. R. 1209, and the cases cited therein, for a statement of the circumstances under which such an instrument may and should be reformed.

We find no fault with the ruling of the trial court, and its decree is affirmed.

*Affirmed.*