# Wytheville

THE FRANKLIN FIRE INSURANCE COMPANY V.
ANNE BOLLING.

June 12, 1939.

Record No. 2093.

Present, All the Justices.

The opinion states the case.

*George C. Peery* and *Alexander H. Sands,* for the plaintiff in error.

*Roland E. Chase* and *S. H. & Geo. C. Sutherland,* for the defendant in error.

HOLT, J., delivered the opinion of the court.

This case is before us on a writ of error to a judgment of the Circuit Court of Buchanan county. That judgment, supported by a jury's verdict, rests upon a fire insurance policy issued to plaintiff by the defendant company.

Henry Bolling and his son, Clarence, conducted a general merchandise business at Pound in Wise county. A part of their stock in trade they carried to Bull creek in Buchanan county, and in June, 1936, went into that business in that place also. Clarence, who was the son of Henry, was the husband of Anne. Their domestic relations were unsatisfactory, and they separated in August, 1936. That separation resulted in a divorce in January, following. Property rights were adjusted. Clarence turned over to Anne his interest in this stock of goods, as did his father. Title to the storehouse was in the father and continued in him. Anne, who in that manner came into complete control, wished to take out fire insurance which would completely cover her undertaking. The amount thereof finally settled upon was $1,200 on the building, $1,200 on furniture and fixtures, and $6,000 on her stock of goods. This insurance was distributed among seven companies and includes the policy in judgment. It bears date as of December 2, 1937, and was delivered to the insured on December 14th, following. Fire, which resulted in a total loss, broke out at about 1:30 A. M. on December 25, 1937. This policy covered $200 on the building, $860 on the stock in trade, and $200 on the furniture and fixtures. Loss was complete. In plaintiff's proof

of loss she valued the building at $4,000, merchandise at $9,000 and furniture and fixtures at $2,138.

Among other policy stipulations are these:

"This entire policy shall be void, unless otherwise provided by agreement in writing added hereto,

"Ownership, etc. (a) if the interest of the insured be other than unconditional and sole ownership; or (b) if the subject of insurance be a building on ground not owned by the insured in fee simple; or (c), if, with the knowledge of the insured, foreclosure proceedings be commenced or notice given of sale of any property insured hereunder by reason of any mortgage or trust deed; or (d) if any change, other than by the death of an insured, take place in the interest, title or possession of the subject of insurance (except change of occupants without increase of hazard) ; or (e) if this policy be assigned before a loss."

The validity of these provisions can not be questioned. *Westchester Fire Ins. Co.* v. *Ocean View Pleasure Pier Co.,* 106 Va. 633, 56 S. E. 584; *Palmetto Fire Ins. Co.* v. *Fansler,* 143 Va. 884, 129 S. E. 727; *North River Ins. Co.* v. *Belcher,* 155 Va. 588, 155 S. E. 699; *Home Ins. Co.* v. *Miller,* 163 Va. 231, 175 S. E. 746. Waiver of them, except under certain circumstances, is prohibited by the policy itself:

"Waiver. No one shall have power to waive any provision or condition of this policy except such as by the terms of this policy may be the subject of agreement added hereto, nor shall any such provision or condition be held to be waived unless such waiver shall be in writing added hereto, nor shall any provision or condition of this policy or any forfeiture be held to be waived by any requirement, act or proceeding on the part of this Company relating to appraisal or to any examination herein provided for; nor shall any privilege or permission affecting the insurance hereunder exist or be claimed by the insured unless granted herein or by rider added hereto."

Of course a company may waive provisions which it had inserted in the policy for its own protection, and this plainly it may do through an accredited agent. Ordinary

fire insurance company agents, with power to select risks and to issue policies, are, within prescribed territorial limits, general agents and may waive unconditional ownership in the insured. *Union Mutual Life Ins. Co.* v. *Wilkinson,* 13 Wall. (U. S.) 222, 20 L. Ed. 617; *Georgia Home Ins. Co.* v. *Kinnier's Adm'x,* 69 Va. (28 Gratt.) 88; *National Liberty Ins. Co.* v. *Jones,* 165 Va. 606, 183 S. E. 443.

"The well established rule, in cases such as this, is that where prior to the issuance of a policy containing the provisions hereinabove quoted, the insurer, or its agent, has knowledge, actual or imputed, of facts which under the express terms of the policy render it void or unenforceable from its inception, and then issues the policy, it is equivalent to an assertion by the insurer that such facts do not invalidate the policy, and, if the insured has acted in good faith, the insurer is thereby estopped, after loss, from claiming that *such facts* avoid its liability thereunder." *North River Ins. Co.* v. *Belcher, supra.* See also, *Sands* v. *Bankers' Fire Ins. Co.,* 168 Va. 645, 192 S. E. 617.

The right to rely upon estoppel in these circumstances has not been abrogated by the act of 1928, entitled "an act to prescribe the form and require the use of a standard fire insurance policy in the State of Virginia" (Acts 1928, chapter 256, pages 763-766, Code, section 4305a). Of course the disclosure must be complete before it can be invoked. To mention one defect and not another is not enough. *North River Ins. Co.* v. *Belcher, supra; Home Ins. Co.* v. *Miller, supra.*

Anne Bolling testified that she told the insurance agent, W. Clyde Dennis, before the policy issued, that she did not own the storehouse building but that it was owned by her father-in-law. Mr. Dennis' evidence is to the effect that she did not, and he tells us that it was not until the 24th of December that he found out what the situation was. A jury question was thus presented, and we are bound by its verdict.

When we come to deal with furniture and accessories, the situation is somewhat different.

There was a meat case, a meat slicer and a McCaskey register valued in proof of loss at $1,320. As we have seen, there were seven policies and in each these three articles were covered to the extent of $200. The meat case was purchased from the C. Schmidt Company of Cincinnati; the meat slicer was bought through Harry Baldwin of Bluefield, West Virginia, who represented some unnamed company. The record does not show from whom the cash register came. All were held under conditional sales contracts and had not been fully paid for when the policy was written, although payments due seem to have been made, unless it be that there was something in arrears on the meat slicer. There appears to have been due on the cash register $160 and on the meat case three installments of $36.40 each. If these articles were held under conditional sales contracts, then Anne Bolling was not their unconditional owner. But it is said that the reservation as to the meat case is in an Ohio contract and is therefore, in substance, but a chattel mortgage; and we are referred to 55 C. J., p. 1194, and to Code, section 6192a. If we accept this textbook's statement of the law as evidence, the situation would not change. In Corpus Juris it is said: "In many jurisdictions, it is held that the security so retained is a lien, or in the nature of a lien." Among the authorities cited to sustain this statement is *Parker Appliance Co.* v. *Co-Operative Machinery Co.*, 110 Ohio St. 255, 143 N. E. 891. There the right to maintain a suit in equity to foreclose with such a lien is sustained. Reference, however, is made to Rev. St. Ohio, sec. 4155-3 (now section 8570, General Code), which gives to the vendor the right of repossession, provided there is refunded to the purchaser a percentage of the amount paid—that is to say, in Ohio these transactions may be treated as chattel mortgages or as conditional sales. This is in principle the law in Virginia. Repossession may be sought or a suit in equity may be instituted to foreclose the lien. *Lloyd* v. *Federal Motor Truck Co.*, 168 Va. 72, 190 S. E. 257.

In *Virginia Fire & Marine Ins. Co.* v. *Lennon*, 140 Va. 766, 125 S. E. 801, 38 A. L. R. 186, it was held that while

as between vendor and vendee a conditional sales contract may be but a short form of chattel mortgage, yet that this is not always true when we come to consider the effect of the sole ownership clause in insurance policies. The insured is not, within the meaning of the policy contract, an unconditional owner.

Moreover, there are no copies of the contracts dealing with the meat slicer and the McCaskey register in the record. All that appears is in this excerpt from it:

"By Mr. Peery:

"I think one or perhaps both are docketed in the clerk's office. As I understood it, it is admitted by the plaintiff that there were two other items, namely, the meat slicer and the McCaskey register, that were bought under conditional sales contract, under which title was reserved or on which a vendor's lien was admitted.

"By Mr. Sutherland:

"The copy of my letter makes that clear. The other two items will be treated as being covered by a contract like the one introduced.

"By Mr. Peery:

"That is that they were covered by contracts known as conditional sales contracts in which the title to which was reserved or upon which a vendor's lien was retained?"

From this it appears that these two contracts were conditional sales contracts. It does not appear that they were Ohio contracts or contracts under the laws of any particular State, from which it follows, in the absence of evidence, that the law as to them is the law in Virginia. It does appear that the meat slicer was bought through a salesman of Bluefield, either in Virginia or in West Virginia.

When, without more, an agent issues a policy of insurance covering real and personal property, he is not required to examine into the titles thereof, and his failure to do so is no waiver of their conditions. *Virginia Fire & Marine Ins. Co.* v. *Lennon, supra; Westchester Fire Ins. Co.* v. *Ocean View Pleasure Pier Co.*, 106 Va. 633, 56 S. E. 584; *Virginia Fire & Marine Ins. Co.* v. *J. I. Case Threshing Ma-*

*chine Co.,* 107 Va. 588, 59 S. E. 369, 122 Am. St. Rep. 875;
*North River Ins. Co.* v. *Belcher, supra; Maryland Casualty
Co.* v. *Cole,* 156 Va. 707, 158 S. E. 873.

Of course forfeitures are never favored. *Home
Beneficial Association* v. *Field,* 162 Va. 63, 173 S. E. 370.

In cases where there has been no fraud and no con-
cealment, and where the insured has answered fairly every
question asked by the agent and where the particular ar-
ticles in judgment were considered and discussed, the in-
surer may be charged with such knowledge as to make prin-
ciples of estoppel applicable.

In *North River Ins. Co.* v. *Lewis,* 137 Va. 322,
119 S. E. 43, Judge Prentis, while conceding that there was
a conflict in the authorities, said that where there was ample
opportunity for the agent to ask all necessary questions, the
failure to answer questions never asked will not forfeit a
policy, citing 16 L. R. A. (N. S.) 1243, note. This principle
we reaffirmed in the late case of *Universal Ins. Co.* v. *Mouel,*
165 Va. 651, 183 S. E. 230. Its applicability brings under
review the dealings between the agent and the insured. The
agent, Mr. Dennis, was a man of wide experience. He was a
lawyer, had been a trial justice and must have been versed
in the law of insurance, for he represented many companies.
He was anxious to secure this business and to that end
sought out Mrs. Bolling. She explained to him her financial
situation and said that she could not set aside for insurance
purposes more than a certain sum of money. The situation
was canvassed, and he asked her many questions. She told
him she had no title at all as to the store building. In con-
sidering its contents, she called his attention particularly to
these three fixtures and told him that they had not been
fully paid for. It is a matter of common knowledge that
when articles like these are sold on a credit basis security
of some sort is taken. When he was told that there were
balances due, he was put upon notice, and it was negligence
on his part to fail to pursue this subject and to ask how
these balances were secured. If he was put upon notice,
he is charged with such notice as he would have acquired

had he examined these recorded contracts. With that knowledge in hand, he could have either issued a policy or have declined to issue it. We have seen that his company, with knowledge of the facts before it, could not insure the building and decline to pay the loss; and it could not insure these chattels knowing how the title stood and then be heard to say that because the title was bad payment should not be required. Surely the company could not be permitted to say: "We will permit you to pay premiums, but we will not pay losses—heads, I win, and tails, you lose."

This is true whether these contracts be treated as conditional sales or as chattel mortgages.

 It is also contended that the policy had been forfeited by reason of failure to observe the requirements of what is known as the iron safe clause and which reads:

"1. The insured will take a complete itemized inventory of stock on hand at least once in each calendar year, and, unless such inventory has been taken within twelve calendar months prior to the date of this policy, one shall be taken in detail within 30 days of issuance of this policy, or this policy shall be null and void from such date, and upon demand of the insured the unearned premium from such date shall be returned.

"2. The insured will keep a set of books, which shall clearly and plainly present a complete record of business transacted, including all purchases, sales, and shipments, both for cash and credit, from date of inventory, as provided for in first section of this clause, and during the continuance of this policy.

"3. The insured will keep such books and inventory, and also the preceding inventory, if such has been taken, securely locked in a fire-proof safe at night, and at all times when the premises mentioned in this policy are not actually open for business; or, failing in this, the insured will keep such books and inventories in some place not exposed to a fire which would destroy the property hereby insured.

"In the event of failure to produce such set of books and inventories for the inspection of this Company, this policy

shall become null and void, and such failure shall constitute a perpetual bar to any recovery thereon."

The question of an inventory came up for discussion. Mrs. Bolling told Mr. Dennis that one had been taken for the current year and that she would take another if necessary. He told her that one taken within thirty days would be satisfactory; indeed, that privilege is given by the policy itself, delivered on December 14, 1937. The fire occurred on Christmas morning, following.

When we look to these iron safe clause provisions, we see that subsection one calls for an inventory within thirty days, unless one had already been taken within the preceding twelve calendar months. One had been taken in January, 1937.

Subsection two declares that "the insured will keep a set of books" containing a complete record of transactions "from date of inventory, as provided for in first section of this clause and during the continuance of this policy;" that is to say, that the insured here promises that she will keep a set of books showing transactions from date of inventory and does not covenant that such a set of books has theretofore been kept. A promise that one "will" do something is a promise of future performance.

In subsection three the insured promises that she "will keep such books and inventory, and also the preceding inventory," in a fire-proof safe. The insured makes no covenants as to what had gone before, save that she will preserve the old inventory, and this she did. The records of transactions which were to be safely kept were records of transactions taking place "from date of inventory;" that is to say, from the date of an inventory not yet taken and which the insured was under no obligation to take until thirty days had passed. It is true that plaintiff introduced records purporting to show purchases and sales during the preceding year, and it is also true that they were not, in every respect, complete and accurate; but if she was not required to make them or to produce them at all, this is no violation of the

iron safe clause, from which it appears that this assignment of error is not well taken.

The question of the indivisibility of the contract of insurance and of its entire forfeiture where one material covenant has been broken has been earnestly and ably argued on behalf of the insurance company; but, for reasons heretofore stated, that in this case is a matter of but academic interest, and since it is of but academic interest, its discussion would be unfruitful. All that might be said would be but dicta.

We have not undertaken to deal with each individual assignment of error but only with those upon which this case turns. Plaintiff is entitled to recover from the defendant on account of furniture and fixtures $200, with interest from February 24, 1938. In other respects the judgment appealed from is affirmed.

*Amended and affirmed.*